UNITED STATES of America,
Appellant,

v.

T. E. HILL, Jr. and Larry Moore et al.,
Appellees.

T. E. HILL, Jr. and Larry Moore,
Appellants,

v.

UNITED STATES of America,
Appellee.

No. 22605.

United States Court of Appeals
Fifth Circuit.

Nov. 7, 1966.

Rehearing Denied Dec. 22, 1966.

**618**

Paul W. Eggers, Wichita Falls, Tex., Eggers, Sherrill & Pace, Wichita Falls, Tex., of counsel, for appellants T. E. Hill, Jr., and Larry Moore.

Melvin M. Diggs, U. S. Atty., Dallas, Tex., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, John B. Jones, Jr., Acting Asst. Atty. Gen., I. Henry Kutz, Robert H. Solomon, Attys., Dept. of Justice, Washington, D. C., C. Moxley Featherston, Richard M. Roberts, Acting Asst. Attys. Gen., Meyer Rothwacks, Atty., Dept. of Justice, Martha Joe Stroud, Asst. U. S. Atty., of counsel, for the United States.

Lee Sellers, Prothro & Sellers, Wichita Falls, Tex., for appellees, City Nat. Bank in Wichita Falls and Jack Jeffus.

L. E. Elliott, Brundidge, Fountain, Elliott & Churchill, Dallas, Tex., for appellee, Trinity Universal Ins. Co. and Henry Yates.

Harold D. Rogers, Wichita Falls, Tex., Leonard Passmore, Austin, Tex., for amicus curiae Texas Bankers Ass'n.

Before JONES, COLEMAN and AINSWORTH, Circuit Judges.

COLEMAN, Circuit Judge.

By judgment on a jury verdict, T. E. Hill, Jr. and Larry Moore, of Wichita Falls, Texas, officers and stockholders of Hill and Moore, Inc., were held individually liable for penalties prescribed by Section 6672 of the Internal Revenue Code of 1954.[1] There were jury verdicts against the bank, bonding company, and certain of their officers, with which the defaulting corporation did business. The District Court entered judgment non obstante in favor of the latter defendants. Hill and Moore appeal from the judgment against them; the Government appeals the action in favor of those absolved. We affirm as to all parties.

1. "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, * * * shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. * * * *"

## I.

### FACTS

Hill and Moore, Inc., was incorporated under the laws of Texas on April 24, 1961. From that time through 1962, Moore was President and Hill was Secretary-Treasurer of that corporation. Each owned fifty per cent of its stock. The corporate business was the construction of family and military type housing units for United States Army and Air Force bases in Texas and Oklahoma as well as for the Federal Housing Authority in Del Rio, Texas.

Prior to incorporation, Hill and Moore had operated as a partnership. The partnership assets and liabilities were transferred to the corporation. In 1961, the partnership assigned its construction contracts to the City National Bank in Wichita Falls as collateral for interim funds advanced, and to be advanced, as construction projects required. Subject to this prior assignment, on January 1, 1962, the corporation was performing on contracts at Del Rio, Texas, and Sheppard Field, Texas. It was then owed certain funds for completed projects at Fort Sill, Oklahoma, and Connally Air Force Base, Texas. Performance bonds on all of these projects, except the one at Connally Air Force Base, were written by Trinity Universal Insurance Company.

The method used for payment of withholding and F.I.C.A. taxes due for the second and third quarters of 1961 was a combination of the depository receipt method for the first two months of the quarter, followed by direct payment by company check for the third month, the check being forwarded with the Employer's Quarterly Federal Tax Return. Payment was duly made for October and November. The quarterly tax return due January 31, 1962 was not filed until February 27, 1962. The return brought with it no payment for December, 1961. Later, quarterly returns for $23,819.38 *without payment,* were filed on April 23, 1962; for $1706.80 on July 21, 1962; and for $201.98 on August 20, 1962.

The corporation ceased doing business about September 1, 1962.

By January, 1962, Hill and Moore, Inc., was in severe financial difficulty. Hill and Moore, the individuals, made a survey of assets, accounts payable, outstanding notes, and other liabilities and saw they "were in the hole". The deficit amounted to as much as $400,000. The situation was explained to the Bank by a conference with its Vice President, Jack Jeffus, one of the defendants below, appellee here. Mr. Hill testified that this conference took place during the latter half of January, he thought on January 18. Mr. Jeffus said that it was on February 1. In any event, on January 18, the Corporation owed the Bank $318,000, as opposed to $53.82 on deposit in its checking account. On January 31, 1962, the Corporation owed $16,033.13 in taxes and had a balance of $10.36 in its checking account. Income taxes withheld in December, 1961, and social security taxes accounted for the $16,033.13.

As will be discussed later, liability, if any, of the Bank and Jeffus, must depend on their connection with the Corporation and its operations between January 18, 1962 and February 21, 1962, the date on which Trinity Universal Insurance Company entered the picture.

By the same token, liability of Trinity and its agent, Henry Yates, depends on their participation after February 21. As of that date, the Corporation owed the Bank $82,321.78 as contrasted with $318,000 on January 18.

The jury verdicts as to all defendants were for the United States. The evidence in favor of the Government, and inferences reasonably to be drawn therefrom, must be accepted as true. Applying this principle, the facts were as follows:

At all pertinent times in issue, the Bank, the Insurance Company, and their agents herein named, knew the Corporation had withheld income taxes on its employees and had not remitted to the

Government, nor had it paid the Social Security taxes.

By virtue of the assignments executed and delivered in 1962, the entire income of the corporation from its construction projects was the property of the Bank.

The corporation had had unrestricted use of funds in its bank account during 1961. Jeffus testified that the bank never had the right to refuse to pay any check drawn if the corporation had funds available to cover it. Several deposits were made into the corporation bank account during February, 1962 which did not originate from the assigned contracts.

From January 18 through February 21, Hill and Moore testified, all checks for $500 or more were approved by Jeffus before payment. It is clear that Jeffus refused to honor overdrafts, and thus make loans, except for essential bills, and there was an agreement that Hill and Moore would advise the bank of large disbursements. Checks came over Jeffus' desk prior to payment.

During the first three weeks of February, 1962, the Bank made several loans to the Corporation by allowing contract progress payments assigned to the Bank to be deposited in the corporate bank account for payment of bills essential to keep the jobs going and cover net payrolls.

It became apparent that the Corporation would not be able to finish the jobs without the help of its bonding company. Sometime around February 12, 1962, Hill and Moore, at their own initiative, conferred with officials of Trinity Universal Insurance Company in Dallas. On February 21, 1962, an agreement was executed between the Corporation, Trinity Universal, and the Bank.

Pursuant to this agreement, Trinity Universal guaranteed a $100,000 loan from the Bank to the Corporation. A special bank account known as the Hill & Moore, Inc. Operating Fund was established. The initial $100,000 deposit was made February 22, 1962. Checks drawn on this account by Hill and Moore had to be approved by Mr. Yates or Mr. Powell of the bonding company.

Also on February 22, 1962, Hill caused a check to be written for the balance of the fourth quarter 1961 withholding taxes. When presented to Powell for approval, he refused the check because his instructions were not to pay the corporation's taxes. The check was never signed by Hill or Moore.

## II.

### THE PLEADINGS

All of the taxes shown to be due on the corporation's quarterly tax returns for the period December 1961—September 1962 were assessed against the corporation. The Internal Revenue Service was unsuccessful in collecting these taxes from the corporation, which at the time of trial had no assets.

In 1964, Hill and Moore each paid the District Director of Internal Revenue $100.99, the penalty assessed for the third quarter of 1962, and sued for a refund. That precipitated this litigation. The United States alleged as third-party plaintiff that the City National Bank, Jack Jeffus, Trinity Universal Insurance Company and Henry Yates, as third party defendants, were liable to the United States for the whole amount of the taxes in controversy, $41,761.29.

The case was tried by the District Court, sitting with a jury. At the conclusion of the testimony before the jury, each party in turn moved for a directed verdict. The Court overruled each motion.

Responding to special interrogatories, the jury found that:

(1) Hill, Moore, the Bank, and Jeffus were liable for the penalty for the fourth quarter of 1961;

(2) Moore and Hill were not liable for the penalty for any part of 1962. The Government did not appeal the judgment rendered on this part of the verdict;

(3) The Bank and Jeffus were liable for the penalty in the first quarter of 1962;

(4) Trinity Universal Insurance Company and Henry Yates were liable for the penalty in all three quarters of 1962.

Each of the parties, except the United States, moved for judgment N.O.V. Motions were denied as to Hill and Moore and granted as to the others. Hill and Moore appeal as to the fourth quarter of 1961 and the Government appeals the judgments N.O.V.

## THE LAW

We now consider the law of the case.

Section 6672 provides that before the penalty can be assessed the following must exist:

(1) There must be a person;

(2) He must be one who is required to collect, truthfully account for, and pay over taxes, and

(3) He must wilfully fail to collect,
OR
Wilfully fail to truthfully account for and pay over such tax.

The word "person" is said in Section 6671(b) to include

" * * * an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

Section 6671(b) has been read not to be exclusive:

"In our judgment the section must be construed to include all those so connected with a corporation as to be responsible for the performance of the act in respect of which the violation occurred."

United States v. Graham, 9 Cir., 1962, 309 F.2d 210, 212.

This "responsible person" test for persons so connected with a business as to be in position to exercise full authority over financial affairs has been widely accepted. See Horwitz v. United States,

236 F.Supp. 812 (S.D.N.Y. 1964), aff'd, 2 Cir., 1965, 339 F.2d 877; Flan v. United States, 7 Cir., 1964, 326 F.2d 356; United States v. Strebler, 8 Cir., 1963, 313 F.2d 402; Frazier v. United States, 5 Cir., 1962, 304 F.2d 528.

■■ There must be a duty, coupled with a wilful violation of that duty, Botta v. Scanlon, 2 Cir., 1961, 288 F.2d 504. Moreover, Section 6672 is on its face penal and must be strictly construed.

In this context we encounter no difficulty in affirming the judgment against Messrs. Hill and Moore, the operating officers and sole stockholders of the defaulting corporation.

### A

■■ Applying the tests prescribed by the statute, Moore and Hill were persons, and they were required to collect, truthfully account for, and pay over the taxes in question. They filed the corporate returns, but there was ample proof from which the jury could find they wilfully failed to pay the taxes.

■ Sections 3402(a) and 3102(a) of the Internal Revenue Code of 1954 require employers to collect employee income and F.I.C.A. taxes. The taxes become a trust fund for the United States in the hands of the employer, Hercules Serv. Parts Corp. v. United States, 6 Cir., 1953, 202 F.2d 938. The desire to continue in business is not justification for violating the trust imposed by law to pay taxes, Paisner v. O'Connell, 208 F.Supp. 397 (D.C.R.I., 1962).

The argument which these appellants make here has been heard before. See United States v. Strebler, 8 Cir., 1963, 313 F.2d 402, where the president of a corporation was held responsible under Section 6672 despite his argument that not he but the corporation's bookkeeper and bank were the ones who made the financial decisions.

In Bloom v. United States, 9 Cir., 1960, 272 F.2d 215, cert. denied 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (1960), the corporation's president and chief

shareholder, not its "allegedly interfering bank", was held liable under Section 6672. The court's account of the testimony in that case fairly describes the facts here. The most important factors were that the bank did not interfere with the management of the corporation and that the corporation was free to draw on its own account to the extent that it had funds in the bank.

Although there was never between February 1 and February 21, 1962, a balance in the Hill & Moore, Inc., account which was not allocated to the payment of outstanding checks, the stipulation of facts shows that Hill and Moore deposited more than enough of their own funds or unencumbered funds of the corporation to pay the taxes for the month of December, 1961. Instead, the funds went to pay other creditors.

The verdict of the jury that Messrs. Moore and Hill wilfully failed to pay over the taxes for the month of December, 1961, due January 31, 1962, finds ample support in the evidence, applying the legal tests herein described, Frazier v. United States, 5 Cir., 1962, 304 F.2d 528.

B

■ We next conclude that the District Court was correct in granting judgment notwithstanding the verdict as to the City National Bank in Wichita Falls and Jack Jeffus.

While placing the duty to pay over withholding taxes on the responsible person, the courts have indicated a strong preference to impose liability only within the corporate or other business structure. In virtually every reported case where liability under Section 6672 has been upheld, the responsible person has been an active officer and shareholder of the company against whom the tax was originally assessed, or one of that company's employees with broad agency powers. See Tiffany v. United States, 228 F.Supp. 700 (D.C.N.J. 1963) wherein the controlling shareholder of a holding company was held liable for withholding taxes of the holding company's wholly owned subsidiary despite the fact a receiver in bankruptcy was in possession of the subsidiary's assets when the taxes fell due.

We have been cited no case, nor have we found one, in which a bank appears to have been held liable under Section 6672 for the withholding taxes of a borrower.

There is strong evidence that Congress has not heretofore intended that Section 6672 should apply to one advancing payroll monies to an employer.

In 1958, Congress considered the problem of collection of withholding taxes and responded with the additions of Sections 7512 and 7515 to the Code, which added new criminal penalties for employers who fail to pay withholding taxes into a special trust fund when required to do so by the Government. The legislative history behind these two new code sections reveals that Congress studied all aspects of the problem, including Section 6672, in connection with these hearings. Senate Report 1182, January 23, 1958, (which is substantially identical with House Report 1006, August 5, 1958), discusses the effect of Section 6672 as follows:

"Present law in section 6672 * * * is ineffective when the employer has lost the employees' funds in a business venture or where he did not have them in the first place. The latter, which presents most difficulty to enforcement problems, can be illustrated by a secondary contractor who is without funds, but obtains from the prime contractor just enough to meet his net payroll. The prime contractor in this case, since he is responsible for the completion of the job, is willing to provide the net wage payments, but *since he is not the 'employer' cannot be required to provide the taxes to be withheld by the 'employer'.*" U.S. Code Congressional and Administrative News, 85th Congress, 2d Session 1958, page 2188. (Emphasis supplied).

The example used in the portion of the Senate Report quoted above—the prime contractor advancing funds to meet the payroll of a subcontractor—is easily comparable to that of a bank lending monies to a prime contractor for the same purpose, which is what the City National Bank did in the instant case.

We have also had our attention directed to House Report 1184 from the Committee on Ways and Means on H.R. 11256, commonly called the Federal Tax Lien Act of 1966. This report contained the following language, at Page 20:

"Under current law, recourse cannot be taken against third persons who directly or indirectly paid the net wages since they are not 'employers' and, therefore, are not liable for the tax".

We do not consider it necessary, however, to rely on the intent of Congress to support the conclusion we have reached. The plain, unambiguous language of the applicable statutes is controlling. All that the Bank did, and all Jack Jeffus as an officer of the Bank did, was to permit Hill and Moore, Inc., to retain from progress payments funds which absolutely belong to the Bank and thereafter to use those funds, in addition to loans, to keep the corporation alive and complete its projects. The Bank and Jeffus were not the employers, they did not manage the internal affairs of the corporation, they were under no duty to file corporate tax returns, they withheld no taxes from corporate employees, and they were under no duty themselves to pay corporate taxes. The assignments of 1961 are not challenged either as to validity or good faith. That the Bank allowed the company to retain and use some of the funds belonging to it cannot be transposed into an assumption of tax liability by the Bank. Indeed, the record is undisputed that Messrs. Hill and Moore were put on notice from the beginning that none of these grace funds could be used to pay taxes. That the Bank exercised a veto power over corporate checks, funded by this method, to insure their use to keep the company alive nowhere brings the Bank within the penal provisions of the statute.

The Government strongly contends that "The effect of the bank's action was to influence Hill and Moore in their refusal to pay taxes withheld in December, 1961, and to preclude the paying over of taxes withheld during the months of January and February, 1962". It further contends that the Bank and Jeffus' conduct was wilful when he preferred other creditors to the United States. United States v. Graham, 9 Cir., 309 F.2d 210 and Cash v. Campbell, 5 Cir., 346 F.2d 670 are cited in support of these views. Graham was simply a member of the board of directors of the defaulting corporation and as such contended he had no responsibility. Cash was president, chairman of the board and general manager of the insolvent non-paying corporation. We are of the opinion that these cases are not authority for the facts as to the Bank and Jeffus.

We are particularly driven to this view by the following language in the brief for the Government:

"Appellant's [Hill and Moore, Inc.] control over corporate funds was not impaired by the bank. After the initial conference with Jeffus, the bank agreed to loan to the corporation funds to complete jobs in progress. The only control which the bank exercised during this period was in connection with the funds which it loaned. Taxpayer Hill admitted at trial that he understood the bank's refusal to honor checks for taxes drawn on these funds to be merely a statement that the bank would not loan the corporation funds for the taxes. (R. 129). Certainly this refusal to make a loan did not place the bank in control of the corporation's checking account or alter appellants' control of the corporation."

## C

We are likewise of the opinion that the judgment, notwithstanding the verdict, in favor of the bonding company and its agent was correct.

Again, it appears that a bonding company has never been held liable for withholding taxes of an employer for which it was surety if it did not run the day-to-day affairs of the employer, cf. Westover v. William Simpson Const. Co., 9 Cir., 1954, 209 F.2d 908, where a contractor who advanced his subcontractor's net payroll was held not to be an employer for withholding tax purposes under the Internal Revenue Code of 1939.

■ Liability of a surety for wages under a contractor's performance bond does not make the surety liable for withholding taxes. United States v. Crosland Constr. Co., 4 Cir., 1954, 217 F.2d 275; General Cas. Co. of America v. United States, 5 Cir., 1953, 205 F.2d 753.

■ The bonding company exercised its rights under the bond but did not take over the internal affairs of the corporation. It was surety for the completion of the Government projects from which Hill and Moore, Inc. realized its income. It guaranteed a bank loan for $100,000, provided the money should be spent only to keep the projects in operation. It maintained joint control of the funds in order to safeguard not only its guarantees to the Government but also to the Bank. So far as the record shows, the surety never refused to approve a corporate check for any sum covered by its bond.

The Texas Bankers Association, amicus curiae, vigorously asserts that Section 6672 applies only to persons and not to corporations, that a penalty involves an element of scienter of which a bloodless corporation is incapable. We do not reach this point as necessary to the decision of this case.

The Judgment of the District Court is in all respects

Affirmed.

## ORDER DENYING PETITION FOR REHEARING ON BEHALF OF T. E. HILL, JR. and LARRY MOORE.

### PER CURIAM:

The appellants, T. E. Hill, Jr. and Larry Moore, petition for rehearing as to so much of the opinion of this Court dated November 7, 1966, as applies to them. Using their own interpretation, they assert certain inconsistencies in the language of the opinion. We remain firmly of the view that there was evidence indicating that these parties had funds under their sole dominion and control which they could have used, but did not, to pay the income taxes withheld and the F.I.C.A. taxes due for the month of December, 1961.

The remainder of the petition deals with a tax period in which the jury found for these appellants and from which the Government did not appeal.

The petition for rehearing as to these appellants is, therefore, denied.