**Carmen L. LAWRENCE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 3–1955–C.**

United States District Court
N. D. Texas,
Dallas Division.

April 21, 1969.

See also D.C., 265 F.Supp. 590.

Locke, Purnell, Boren, Laney & Neely, by J. J. French, Jr., Dallas, Tex., Palmer, Green, Palmer & Burke, by Philip I. Palmer, Sr., Dallas, Tex., for plaintiff.

John O. Jones, Atty., Dept. of Justice, Tax Division, Fort Worth, Tex., Eldon B. Mahon, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., Dallas, Tex., for defendant.

## OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

Petitioner here sues for recovery of a 100% penalty assessment made on February 5, 1965 against her individually and as independent executrix of her husband's estate. The Internal Revenue Service levied the assessment pursuant to 26 U.S.C.A. 6672[1] for unpaid excise, withholding and F.I.C.A. taxes of Casa View Country Club, Inc. for the fourth quarter of 1960 and the first, second and third quarters of 1961. Petitioner paid the assessment, and the parties agreed

---

1. "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable. Aug. 16, 1954, c. 736, 68A Stat. 828."

that, in the event a suit for refund of such payment was unsuccessful with respect to either "The Estate of F. A. Lawrence, Carmen L. Lawrence, Independent Executrix", "Carmen L. Lawrence, Individually", the original payment would be applied against the assessment so upheld. The Commissioner further agreed to collect not more than 100% of the total unpaid excise, withholding, and F.I.C.A. tax liability of Casa View Country Club, Inc., for the fourth quarter of 1960 and the first, second and third quarters of 1961.

Casa View Country Club (hereinafter called Casa View) was organized and incorporated on January 24, 1958. Casa View's promoters also incorporated Casa View Management Corporation (hereinafter called Management Corporation). In accordance with a contract dated June 11, 1958, Management Corporation received from Casa View full responsibility with commensurate authority to operate the club. Under the operators' agreement Management Corporation was to plan, direct, manage and supervise the construction of the club's golf course, clubhouse, swimming pool, tennis courts, and other facilities and to manage, direct and operate the same when completed, together with all related activities. Further, Management Corporation determined the initiation fee and other requirements for membership in the Country Club and promulgated rules and regulations to govern the use of the club's facilities. Management Corporation had complete control over the collection and expenditure of all funds.

On November 17, 1958, Management Corporation, having encountered financial difficulties and having its club facilities in a semi-completed state, borrowed $35,000 from Mr. F. A. Lawrence, petitioner's deceased husband. Lawrence, in order to secure his loan, received control over the disposition of the loan proceeds and all other funds of Management Corporation in addition to a share in the debtor's profits. This arrangement included Mr. Lawrence's right to co-sign all drafts or checks drawn on either

Casa View or Management Corporation until such time as the $35,000 loan, plus 6% interest, had been fully repaid. Lawrence was also given the prerogative of delegating or foregoing his checksigning authority, but his failure to exercise the right would not cause its forfeiture. The agreement further provided that should the loan not be fully repaid within two years Lawrence automatically acquired Management Corporation with all its assets, as well as the leasehold, with purchase option clause, held by the promoters of Management Corporation and Casa View, which leasehold had been subleased to Casa View. This contingency occurred.

As a result of the November 17th agreement Casa View's bank accounts were closed and two new ones opened on December 1, 1958. These accounts accommodated Lawrence's co-signing authority. On February 4, 1959, the signature authority of one of the accounts was changed so as to allow Lawrence to sign individually or as a co-signer.

Until F. A. Lawrence's death on September 28, 1960, the club manager conducted the day-to-day operations of the club's facilities while Lawrence handled all fiscal matters. At this time the ultimate control formerly held by Lawrence vested in his wife as sole beneficiary and independent executrix under his will. She in turn appointed Richard L. Mackay as attorney for Lawrence's estate and as her personal representative and Lee W. Branch, a certified public accountant, as a financial consultant for her and the estate in March, 1961. On October 12, 1960, Mackay notified both banks handling Casa View accounts of Lawrence's death and that henceforth all Casa View checks would have to be countersigned by J. C. Thomas, the designee of the Lawrence estate. Thereafter all checks drawn on either Casa View account were signed by the club manager and Thomas who was required to obtain approval from either Mrs. Lawrence or the estate's representative before authorizing any disbursements. Accordingly, Thomas consulted periodically with petitioner

or representatives of the Lawrence estate as to what bills should or should not be paid until Mrs. Lawrence closed Casa View on Labor Day, 1961.

Any suit under 26 U.S.C.A. § 6672 has three litigable issues:

1. Whether the party-taxpayer is a person within the terms of the statute;

2. Whether the party-taxpayer is the one who is required to collect, truthfully account for, and pay over any tax imposed by this title; and

3. Whether the party-taxpayer

a. willfully failed to collect such tax,

b. willfully failed to truthfully account for and pay over such tax, or

c. willfully attempted in any manner to evade or defeat any such tax.

United States v. Hill, 368 F.2d 617 (5th Cir. 1966) and 26 U.S.C.A. § 6672.

Mrs. Lawrence asserts that neither is she a responsible person under the Act in either of her capacities nor was she willful in failing to pay over the subject taxes.

▮▮▮ The term "person" is defined by 26 U.S.C.A. 6671(b) [2] as including officers or employees of a corporation or member or employee of a partnership who as such is under a duty to pay the tax. This definition, however, is not to be read restrictively. The expressed positions are only illustrative of the type of individuals so covered. United States v. Graham, 309 F.2d 210 (9th Cir. 1962) and United States v. Hill, supra. Ordinarily a creditor as such would not acquire any responsibility for its debtor's taxes even if the creditor exercised a veto power over the debtor's checks, United States v. Hill, supra, but this is not an ordinary situation. Mr. Lawrence here voluntarily assumed this duty and thereby his estate by his November 17,

1958 contract with Management Corporation. In that agreement, as part of his consideration, he received control over the disbursement of all funds of Casa View and Management Corporation. Unlike the supervisory or veto control in *Hill*, which was to provide the bank creditor with the knowledge of how its funds were spent, Lawrence acquired the veto power in a way in which he substantively decided how the money would be expended. This factual distinction is more simply expressed as an inspection versus a control veto. Supervisory control of the nature possessed by Lawrence while alive and his executrix after death places its owner well within the term "person", as defined by 26 U.S.C.A. 6671(b). Requisite responsibility is predicated on a determination of who "had the final word as to what bills should or should not be paid, and when"; Wilson v. United States, 250 F.2d 312, 316 (9th Cir. 1957); United States v. Graham, 309 F.2d 210, 212 (9th Cir. 1962); and White v. United States, 372 F.2d 513, 178 Ct.Cl. 765 (1967); or who was "so connected with a business as to be in position to exercise full authority over financial affairs." United States v. Hill, supra, 368 F.2d at 621. Stated in either fashion, final word or full authority, Lawrence and then his wife as executrix of his estate would fit the description. Mrs. Lawrence nonetheless alleges that since she had delegated the pursestring authority to her attorney and accountant prior to the time these obligations arose, she was not responsible and therefore not liable. Whether a "person" under the Act delegates this or greater authority is irrelevant so long as the seat of that authority and the power to revoke it remain in the grantor.

▮▮▮ Although the Commissioner has the burden of proving ultimate control under the statute, this burden shifts once the assessment is paid and control is presumed. Melillo v. United States,

2. "The term 'person', as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs. Aug. 16, 1954, c. 736, 68A Stat. 828."

244 F.Supp. 323 (E.D.N.Y.1965); Sherwood v. United States, 246 F.Supp. 502 (E.D.N.Y.1965). Thus, in a refund case petitioner must prove that he or she did not have ultimate control during the period involved. If delegation is alleged, the petitioner must prove that all power and authority in fact had been delegated in advance of the period for which taxes are owed. If the court were to hold otherwise, responsible persons could absolve themselves of tax liability simply by appointing a feigned agent. Petitioner failed to prove herself void of control over Mackay, Branch and Thomas as representatives of the estate and in fact could not so prove since, as executrix of the estate, she personally was vested by law with the ultimate responsibility for the estate. Walling v. Hubbard, 389 S. W.2d 581, 589 (Tex.Civ.App., Houston 1965).

On the question of "willfulness" petitioner again contends that she absolved herself of liability by turning over her personal financial affairs and those of the estate to her attorney and accountant. This situation, she claims, caused her unawareness that the subject taxes were unpaid or that other creditors were preferred over the United States government. Mrs. Lawrence analogizes this to United States v. Leuschner, 336 F.2d 246 (9th Cir. 1964). By relying on *Leuschner* the essence of petitioner's argument becomes clear, i. e., the element of willfulness is personal and cannot be attributed vicariously. Therefore, petitioner argues, since Mackay and Branch handled the estate's business affairs, she could not have been willful with regard to nonpayment of the subject taxes.

Petitioner's analogy to *Leuschner* on this point is accurate. There the Ninth Circuit held that the trial court was not clearly erroneous in finding that Leuschner, as a director and general manager of the employer corporation and as a co-signer on all checks and the tax return, had not been willful in failing to remit tax payments when another corporate employee kept the books, paid the bills, and made out and filed the tax returns.

Leuschner, however, had shown a complete reliance on the bookkeeper and had spent most of his time outside the office running most other aspects of the business. In this light the opinion's tenor indicates that willfulness is and can not be vicariously imposed. However, the court additionally held that once Leuschner had learned of the bookkeeper's behavior and allowed it to continue, Leuschner himself became willful as a matter of law.

■ This court has no quarrel with the Ninth Circuit. Willfulness is personal in nature and only to the one in ultimate control. Nevertheless, since this is a refund case, willfulness is presumed, and petitioner has the burden of absolving herself of the willfulness by a preponderance of the evidence. Melillo v. United States, supra; Schweitzer v. United States, 193 F.Supp. 309 (D.Neb., 1961). Absolution is achieved by a showing of reasonable cause, Frazier v. United States, 304 F.2d 528 (5th Cir. 1962), which at a minimum is more extensive than proof of a mere delegation of financial authority. Such delegation alone will not eradicate the taxpayer's willfulness in a suit for refund. As stated above with regard to the issue of ultimate control, if the court were to hold otherwise, the "person" in ultimate control would only have to appoint a non-thinking functionary without discretion in order to cut short the attachment of willfulness and insulate himself from liability. He in effect could achieve indirectly that which he could not achieve directly, and Section 6672 would be completely frustrated.

Aside from the distinction that Leuschner showed reasonable cause and Mrs. Lawrence did not, Mrs. Lawrence, as previously stated, was in ultimate control whereas Mr. Leuschner was not. Although Leuschner was a signatory on all checks, the trial court was convinced that the right was little more than formality. In essence, the trial court found Leuschner truly unaware thereby catapulting the bookkeeper, Anders, into the position of ultimate control. The case at bar pre-

sents convincing proof that Mrs. Lawrence never in fact lost her position of ultimate control.

 In sum, Mrs. Lawrence failed to show (1) that she was not a "person" covered by Section 6672, (2) that she was not the person in ultimate control, nor (3) that there was reasonable cause for her as the person in ultimate control not to have been aware of the violative preferences practiced by her agents.[3] Therefore, the refund Mrs. Lawrence requests must be denied.

---

3. In a letter from Branch, the estate's accountant, to the board of directors of Casa View Country Club, Inc., he stated: "Let us [Mrs. Lawrence and the Lawrence estate] point out to you that at no time did the Lawrence Estate assume the debts of the country club. All the criticism about someone paying the butcher and letting excise taxes go is purely academic. For the past two years, the butcher was paid because he was outside the door with his hand out, whereas the Government did not press its claim."