David KOEGEL, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 75 Civ. 5013–CLB.

United States District Court,
S. D. New York.

July 1, 1977,

Stephen L. Packard, New York City, for plaintiff.

N. L. Gerber, Asst. U. S. Atty., New York City, for defendant.

## FINDINGS AND CONCLUSIONS

BRIEANT, District Judge.

By his complaint filed October 13, 1975, plaintiff David Koegel seeks a refund of a tax penalty of $24,872.35, which he paid on April 4, 1973. This penalty was timely assessed on November 24, 1971 for the unpaid federal employee withholding taxes and the Social Security ("FICA") taxes of Auburn Toys, Inc. ("Auburn Toys"). The assessment included $12,462.98 for the first quarter of 1969 and $10,562.12 for the second quarter of 1969, together with interest of $1,838.25 and a lien fee of $6.00, all of which Auburn Toys had failed to pay when due, although withheld to the extent chargeable to its employees.

Plaintiff contends that this assessment, made pursuant to Sections 6671 and 6672 of the Internal Revenue Code ("IRC"), was illegal and erroneous in that he was not a "person" responsible for the collection and payment of these FICA and payroll withholding taxes, and that he did not "willfully" fail to collect, account for and pay over these taxes.

On April 3, 1975, plaintiff filed a timely Claim for Refund on Internal Revenue Service ("IRS") Form 843. This claim was denied by the IRS on May 23, 1975. This action was timely brought, and the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1346(a)(1). A non-jury trial was held before me on December 22 and 23, 1976. Post-trial briefs have been submitted and considered.

### Facts

Familiarity is assumed with the uncontested facts which have been stipulated to in the Pre-Trial Order, signed December 22, 1976. Since 1965, plaintiff was the president and chief executive officer of the Flora Mir Candy Corporation ("Flora Mir") located in New York, which manufactured chocolates and other candies. Beginning in April, 1968, Flora Mir embarked on a program to acquire smaller candy companies in order to create a single large candy company. During the ensuing four months, Flora Mir acquired eleven subsidiaries, owning 100% of the capital stock of each.

Following these acquisitions, Koegel testified that he concentrated on "financing, acquisitions and developing some new ideas such as combining candy with toys and bringing in a larger income. . . ." (Tr. p. 8).

In middle or late 1968, Mr. R. J. Hodson, then president of Auburn Rubber, a toy manufacturing company, approached plaintiff regarding the possible acquisition of the business of his company by Flora Mir. Plaintiff did not acquire the company on behalf of Flora Mir, since, as he testified:

"[T]he toy company has been burdened with heavy longterm loans, and as such it would have ruined Flora Mir Candy's financial statements and financial position. . . ." (Tr. p. 11).

He did, however, agree to acquire the company himself, with a view to packaging Flora Mir candies inside of or together with toys produced by Auburn Rubber.

To execute this plan, in December 1968 plaintiff arranged for the incorporation of Auburn Toys as a New Mexico corporation, located in Deming, New Mexico. Plaintiff, together with his wife, owned over 60% of the outstanding stock of this corporation. The balance of the stock of Auburn Toys was held by James M. Martin (33%), who executed a voting proxy to Koegel (JX–2), Zia Investment Co. (2%) and Shirley M. Henschel (1.66%). Auburn Toys immediately acquired all of the outstanding common stock of Auburn Rubber, paying no consideration whatsoever to the former owners of that stock. In short, plaintiff, through Auburn Toys, acquired the ongoing business of Auburn Rubber without anybody paying any money. (Tr. p. 13). Instead, plaintiff acquired the company with the promise of an infusion of capital to insure its continued solvency and, of course, continued employment for its employees.

At the time of its acquisition, Auburn Rubber was burdened with over $200,000.00 in debts. Plaintiff lent $100,000.00 of his own money for the purpose of settling these old debts, thus hoping to reopen credit lines

for the business. Approximately $86,000.00 of this fund was spent in settling Auburn Rubber's debts. Plaintiff contends that he did not take part in the actual settlement of these debts, but rather, authorized that this be carried out by two of his subordinates at Flora Mir, Messrs. Stanley Goldman (Assistant to the President of Flora Mir) and Harvey Kaplan (Vice President and Accountant of Flora Mir).

Plaintiff was never an officer, director or employee of Auburn Toys (Stipulation ¶ 43). During the relevant time period (January 1, 1969–June 30, 1969), plaintiff was the president and chief operating officer of Flora Mir, and the manager and vice president of the Hotel Kenmore in New York City where Flora Mir maintained its offices. The officers of Auburn Toys included Frieda Howe, president (a desk clerk at the Hotel Kenmore); John Amiento, secretary (Frieda Howe's husband and a former employee of the Hotel Kenmore); Shirley M. Henschel, assistant secretary (vice president and a director of Flora Mir with offices in the Hotel Kenmore); Albert Zodda (a vice president of Flora Mir); and J. Thomas Hodson (a former officer of Auburn Rubber and son of its former president). Of the five directors of Auburn Toys (Stipulation ¶ 30), the clear majority were employees of Koegel and under his complete control.

The three top executive employees of Auburn Toys, in Deming, New Mexico were J. Thomas Hodson, John C. Hodson and Ronald Sherman. J. Thomas Hodson was the son of the founder of Auburn Rubber, R. J. Hodson. J. Thomas Hodson was employed by Auburn Toys from January 1, 1969 until late February 1969, serving in the capacity of executive vice president. Although J. Thomas Hodson did not testify at the trial, his deposition was taken in Albuquerque, New Mexico on October 27, 1976, and admitted into evidence as Government's Exhibit 10 ("GX"). Mr. Hodson testified that he was fired by plaintiff in a telephone call in which a dispute arose over Koegel's failure to advance funds to Auburn Toys to the full extent which had been promised. Koegel's denial of this conversation (Tr. p. 50) is not credited by the Court.

John C. Hodson was employed by Auburn Toys from January 1, 1969 to February 20, 1969 in the capacity of special assistant to the executive vice president. Mr. John Hodson did not testify at the trial, but was deposed in Dallas, Texas on December 6, 1976. His deposition was admitted into evidence at the trial as GX 11. Mr. John Hodson testified that he was fired by plaintiff in the course of the telephone conversation between plaintiff and John Hodson's brother above mentioned. Again, Koegel's denial is not credited.

Mr. Ron Sherman was employed by Auburn Toys from mid-February through mid-May 1969 in the capacity of plant manager at Deming, New Mexico. He testified that he was recommended for this job by an attorney, Mr. Ralph Wanek. He was then interviewed in Deming by Mr. Stanley Goldman of Flora Mir. Mr. Sherman did not testify at trial but was deposed in Miami, Florida on October 27, 1976. This deposition was admitted into evidence as GX 9. In the course of the deposition, Mr. Sherman testified that he took orders from Mr. Stanley Goldman and from Mr. David Koegel.

Plaintiff had no authority to sign checks for Auburn Toys (Stipulation ¶ 44). However, in order to induce Mercantile Financial Corp. ("Mercantile"), a commercial factor of Chicago, Illinois, to enter into an agreement with Auburn Toys to finance its accounts receivable, plaintiff did sign a personal guarantee for Auburn Toys, Auburn Rubber, and Auburn Financial Corporation. (See JX 6 and 7). The guarantee and the accounts receivable financing agreement were both executed on January 2, 1969. Koegel personally negotiated this agreement with Mr. Howard Grant of Mercantile, beginning in January 1969, and culminating in a joint visit to Deming, New Mexico in April 1969.

There is no dispute as to Auburn Toys' failure to pay the required federal employee withholding tax and FICA tax for the first two quarters of 1969. The federal employer's tax return for the relevant peri-

od was signed by Ronald Sherman (Stipulation ¶ 45).

Although plaintiff was not officially present at Auburn Toys, it does appear that he directed several of his employees at Flora Mir to act pursuant to his minute instructions, regularly given, in managing the business and financial affairs of Auburn Toys. The record reveals that Stanley Goldman, Harvey Kaplan and Albert Zodda, all Flora Mir employees, were actively involved in the payment of creditors of Auburn Toys and the hiring and firing of Auburn Toys employees. For example, plaintiff testified that he delegated to Goldman the responsibility for the daily affairs of Auburn Toys including the "payouts" of the $200,000.00 of debts accumulated by Auburn Rubber. He testified to the same effect with respect to the activities of Kaplan.

Goldman (Koegel's personal assistant) testified, and I find, that his authority with respect to Auburn Toys stemmed directly from Koegel, with whom he consulted on a regular basis. Koegel personally chose the president and secretary of Auburn Toys. Koegel opened all the incoming mail at the offices of Flora Mir, according to Goldman, in order to keep "control" of all his companies. Koegel often read a letter pertaining to Auburn Toys then called in Goldman and instructed him as to the required response. Goldman also had several conversations with Koegel regarding which creditors of Auburn Toys should be paid and which should not be paid.

Frieda Howe, the desk clerk at the Hotel Kenmore, who served as president of Auburn Toys, testified, and I find, that she knew nothing about Auburn Toys and acted solely at the behest and directions of Mr. Koegel, exercising no independent discretion in the matter. She signed papers without reading or understanding their content, because Mr. Koegel informed her that he needed someone to sign papers. Ms. Howe never benefited financially or otherwise from her relationship with Auburn Toys, never exercised any independent control over the affairs of the corporation and never attended any corporate meetings. The Court finds that Ms. Howe and her husband John Amiento lacked any business skill and were incapable of making business decisions.

Mr. Albert Zodda, once vice president of Flora Mir, testified that he had several conversations with J. Thomas Hodson, the substance of which he then discussed with Koegel. In February 1969 Zodda made a trip to Deming, New Mexico to inspect the Auburn Toys operation first hand. Before the trip Zodda discussed Auburn Toys' various problems with Koegel, who instructed Zodda as to what he should look for in Deming. During the trip, Zodda contacted Koegel, who instructed Zodda to fire the Hodsons and put Ron Sherman in charge of Auburn Toys. After Zodda's return to New York, a meeting was held with Koegel in which the two discussed the financial situation at Auburn Toys, and Koegel affirmed that the new structure was as he wanted it to be.

The deposition testimony of Messrs. Hodson, Hodson and Sherman is additional evidence in support of the finding that Koegel was the ultimate power controlling the activities of the management of Auburn Toys. These depositions further reveal that Koegel was in direct contact with the Hodsons, and later with Sherman with respect to all the essential business and financial decisions concerning Auburn Toys.

The record establishes that Harvey Kaplan, Flora Mir's vice president and accountant, was aware at all times after January 15, 1969 that Auburn Toys was not paying the required withholding and FICA taxes. He learned of this through the weekly communications of the Hodson brothers, who were continually promised that the money would be forwarded from Flora Mir. The Court may and does infer, based on all the evidence in the record, that Mr. Koegel also was aware of this situation. In any event, in April, 1969, Koegel was personally made aware of Auburn Toys' tax liability, in a meeting in New Mexico attended by Mr. Howard Grant of Mercantile and Ron Sherman, the plant manager of

Auburn Toys. After being informed personally of the tax problems, Koegel promised to take care of the matter. (Tr. p. 139).

*Discussion*

■ Plaintiff, in a tax refund action brought pursuant to a § 6672 assessment, bears the burden of establishing by a preponderance of the credible evidence that he was not a "responsible person" required to collect and pay over the required taxes, and that the failure to so act was not "willful," but was merely negligent or excusable for "reasonable cause." *Melillo v. United States*, 244 F.Supp. 323 (E.D.N.Y.1965). This burden must be carried by plaintiff, since the tax assessment itself creates a *prima facie* case against plaintiff. *United States v. Lease*, 346 F.2d 696 (2d Cir. 1965); *Gromacki v. Commissioner of Internal Revenue*, 361 F.2d 727 (7th Cir. 1966); *Psaty v. United States*, 442 F.2d 1154 (3d Cir. 1967); *United States v. Rexach*, 482 F.2d 10 (1st Cir. 1971), *cert. denied* 414 U.S. 1039, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973).

In order to show that he was not a "responsible person" liable for the withholding and FICA taxes of Auburn Toys, Koegel must show that there is an insufficient connection between himself and the company liable for the employee taxes.

■ A "responsible person" has been defined as one who has the final word as to what bills should or should not be paid. Or, in more general terms, a "responsible" person is one who is so connected with the business as to exercise full authority over financial affairs, and therefore to be ultimately responsible for the decision as to payment of the tax. *Werner v. United States*, 374 F.Supp. 558 (S.D.N.Y.1974), *aff'd.* 512 F.2d 1381 (2d Cir. 1975); *Silberberg v. United States*, 355 F.Supp. 1163 (S.D.N.Y.1973); *Lawrence v. United States*, 299 F.Supp. 187 (N.D.Tex.1969).

The purpose of § 6672, which holds the "responsible person" (as defined in § 6671) liable for the failure to pay tax, has been explained:

"The statute's purpose is to permit the taxing authority to reach those responsible for the corporation's failure to pay the taxes which are owing. It would make little sense to confine liability to those performing the mechanical functions of collection and payment when such functions are performed simply in accordance with the executive judgment of others whose duty it is to decide for the corporation in this area. *United States v. Graham*, 309 F.2d 210, 212 (9th Cir. 1962)." [Cited in *Werner v. United States, supra*, at 562].

Keeping this statutory purpose in mind, and the definitions of "responsible persons" set forth above, we consider plaintiff's relationship with Auburn Toys.

■ Koegel offers only his own interested testimony to support his contention that he did not exercise a sufficient degree of financial control over Auburn Toys to qualify him as a "responsible person." But the trial record is replete with contradictions of this self-serving testimony. There is evidence to the effect, and I find, that Koegel arranged for the appointment of the officers and directors of Auburn Toys, that the officers were without business skill and were only nominal officers fully controlled by Koegel, that he personally arranged for the continued financing of Auburn Toys accounts by Mercantile, that he maintained telephone contact and personal contact through his closest associates with the persons operating the New Mexico plant and office of Auburn Toys, and that he arranged for the hiring and firing of Auburn Toys executive employees. These facts may be considered in determining Koegel's overall business relationship to Auburn Toys.

Koegel was aware, through the knowledge of his personal assistant and vice president, of the outstanding tax liability of Auburn Toys. Yet he chose to direct the payment of other creditors in preference to this required tax obligation. By April 1969, Koegel was made personally aware of the failure to meet the required tax obligations, but still failed to take the steps required to insure payment.

Koegel's chief defense to the charge that he is a "responsible person" under § 6672 is that he was not in touch with the overall business and financial affairs of Auburn Toys since he had delegated this responsibility to his subordinates. The defense of delegation has been raised before in suits by delinquent taxpayers. *Lawrence v. United States, supra.* In that case, plaintiff contended that since she had delegated the financial responsibilities for the company to her accountant and lawyer, she was no longer a "responsible person." The Court rejected this view in no uncertain terms:

"Whether a 'person' under the Act delegates this or greater authority is irrelevant so long as the seat of that authority and the power to revoke it remain in the grantor." *Lawrence, supra,* at 190.

Koegel is found to have been a "responsible person" in accordance with the statutory definition. Although he may have delegated responsibility to Goldman, Kaplan and others of his subordinates, the Court finds that he remained in ultimate control with no present or future intention of relinquishing this control. His subordinates sought his advice on a regular basis, kept him fully informed of the financial situation of the company and never took action without his personal approval. Koegel, in turn, freely gave instructions to both Flora Mir and Auburn Toys executives. (See, for example, GX 2 and 4).

Having now established that Koegel was a "responsible person" we turn to the question of willfulness. The standard for determining willfulness is well established in this Circuit. In *Kalb v. United States,* 505 F.2d 506, 511 (2d Cir. 1974), *cert. denied* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975), this standard is set forth:

"Conduct amounting to no more than negligence is not willful for purposes of § 6672. It is, however, not necessary that evil motive or intent to defraud be proven in order to establish willfulness. *Monday* [*Monday v. United States,* 421 F.2d 1210, 1216 (7th Cir.), *cert.* denied 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970)] defined willful action under § 6672 as 'voluntary, conscious and intentional—as opposed to accidental—decisions not to remit funds properly withheld to the Government.' That definition has been widely accepted. *Monday* also points out, as has to be the case, that willful conduct 'may also indicate a reckless disregard for obvious or known risks.' [*Id.* at 1215] Willful conduct also includes failure to investigate or to correct mismanagement after having notice that withholding taxes have not been remitted to the Government." [Citations omitted].

In addition to the definition supplied by *Kalb, supra,* this Circuit has held that it is evidence of willfulness if a person has, "voluntarily, consciously and intentionally preferred other creditors of the corporation over the United States." *Spivak v. United States,* 370 F.2d 612, 615 (2d Cir.), *cert. denied* 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967).

The evidence presented at this trial establishes that Koegel "willfully" failed to pay the required taxes. This result is reached by considering the close control which Koegel maintained over his subordinates and thereby, through them, over the affairs of Auburn Toys, by Koegel's specific directions to pay creditors of Auburn Toys rather than the required taxes, by Koegel's first-hand relationship with Mercantile, and by his overall first-hand awareness at all times of the financial and business conditions of the company. Koegel knew that the required taxes were due for the first and second quarter of 1969. His failure to make these payments was certainly, under all the circumstances, willful. Plaintiff has failed to establish by a preponderance of the evidence that (a) he was not a "responsible person" under § 6671, and (b) that he did not act "willfully" in failing to pay the required taxes.

The foregoing, together with the Stipulated Findings of Fact, incorporated into the Pre-Trial Order of December 22, 1976, as well as the Findings of Fact and Conclusions of Law submitted by the parties as modified and signed by the Court, to the

extent not inconsistent herewith, constitutes this Court's Findings of Fact and Conclusions of Law, pursuant to Rule 52, F.R.Civ.P.

The Clerk of the Court shall enter judgment for defendant pursuant to Rule 58, F.R.Civ.P. that all relief is denied.