FIDELITY BANK, N. A.,
Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant,

v.

FIDELITY BANK, N. A., Defendant on
Counterclaim-Appellee.

No. 77–1972.

United States Court of Appeals,
Tenth Circuit.

Argued March 15, 1979.

Decided March 6, 1980.

Rehearing Denied April 22, 1980.

Murray S. Horwitz, Atty., Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen.,

Gilbert E. Andrews and Michael L. Paup, Attys., Dept. of Justice, Washington, D. C., with him on brief; Larry Patton, U. S. Atty., Oklahoma City, Okl., of counsel), for the United States.

Michael E. Krasnow, Oklahoma City, Okl., for Fidelity Bank, N.A.

Before SETH, Chief Judge, and BARRETT and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

■ CDI Homes, Inc., a construction company, failed to pay $36,150.42 in income and Federal Insurance Contribution Act (FICA) taxes it withheld from wages paid to its employees during the second quarter of 1973. The Commissioner assessed against Fidelity Bank, N.A., a lender to CDI, a penalty in the amount of one hundred percent of the withholding taxes owed by CDI, relying upon I.R.C. § 6672. Fidelity paid $381.23 of the amount assessed and brought this refund suit.[1] The government counterclaimed for the unpaid balance and also alleged that Fidelity was liable for a sum equal to the taxes under I.R.C. § 3505(b). The jury found in favor of Fidelity and against the government on the refund claim and the counterclaims. Following denial of the government's motion for judgment notwithstanding the verdict, the trial court awarded $3,303.75 in attorney's fees to Fidelity. This appeal ensued.[2]

The questions argued here are (1) whether the government's motions for judgment

---

[1] Generally the taxpayer must pay the full tax or penalty assessment before challenging its validity in the federal district court. *Flora v. United States*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1957), *op. on rehearing*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). Penalties imposed under I.R.C. § 6672 are considered a cumulation of separable assessments for each of the employees involved, however, permitting suit after payment of one or more employee's taxes. *See, e. g., Psaty v. United States*, 442 F.2d 1154 (3d Cir. 1971).

[2] The United States also filed a counterclaim, based on I.R.C. § 6672, against the estate of Charles E. Johnson, Eugene Shirley, Arcelia Beals, and John Reinig. The counterclaim against Reinig was dismissed by the trial court with prejudice. The jury found that the Johnson estate and Eugene Shirley were liable for the penalty taxes; Johnson and Shirley owned and controlled CDI. Beals, the corporate bookkeeper, was found not liable.

The Johnson estate, Shirley and Beals all appealed to this Court (Beals asserting the trial court erroneously denied her claim for attorney's fees). Their appeals were consolidated with the United States appeal against the bank, but were later dismissed by order of this Court, acting upon the stipulation to dismiss filed by those parties and the government. Thus, this appeal concerns only the United States and Fidelity.

n. o. v. were erroneously denied, (2) whether the trial court's instruction to the jury that the government bore the risk of nonpersuasion with respect to the section 6672 counterclaim was error, and (3) whether the trial court erred in awarding attorney's fees pursuant to 42 U.S.C. § 1988 without finding the government's action was in bad faith, frivolous, unreasonable or without foundation.

Viewing the facts and reasonable inferences drawn therefrom in a light most favorable to Fidelity, the record shows the following. Beginning in 1971, CDI built prefabricated homes for the Kiowa Housing Authority (KHA), which apparently is affiliated with the Department of Housing and Urban Development. This contract was acquired from another construction company, and pursuant to the acquisition agreement contract payments owed by KHA to CDI were sent directly to an escrow account maintained at Fidelity. Under the terms of the escrow contract, a certain portion of the funds received were distributed to the old construction company and other specified entities, and the balance was available to CDI.

In order to be able to perform the construction contract, CDI obtained from Fidelity a one million dollar revolving credit line. This loan was used by CDI for construction of a prefabrication plant and for general working capital. In conjunction with the extension of credit, CDI assigned to the bank the proceeds from the KHA construction contract, CDI's only source of income, and granted to the bank a security interest in all CDI's assets.

In January 1973 financial difficulties forced CDI to shut down its operations. At that time the bank requested financial information from the company and discovered the company had lost a substantial amount of money. After securing additional collateral, the bank agreed to provide the funds necessary for resuming operations. Since CDI had by that time exceeded the $1,000,-000 line of credit, the bank allowed CDI to overdraw its account, but only when a sale of homes to KHA was imminent. From January 1973 until June 26, 1973, the CDI account was overdrawn in amounts generally of $60,000 to $80,000 and as much as $180,000.

The procedure followed for approving the overdrafts was as follows. An officer of CDI would contact Mickey Johnson, the bank officer in charge of monitoring the CDI account, apprise Johnson that a sale was forthcoming and that certain creditors must be paid to complete the transaction, and request that the bank extend sufficient credit by honoring checks drawn in excess of the credit line. CDI would then draft checks and when they came to the bank through normal banking channels, Johnson would examine each; if the payee appeared to be a bona fide CDI creditor connected with the KHA project, Johnson initialled the check, which was then honored. These additional extensions of credit, although made separately, were secured by the same security agreements and assignments of contract proceeds that applied to the original extension of credit. Until June 26, the bank honored all CDI checks.

In conjunction with the reopening of the plant in January, and at the bank's request, CDI closed its payroll account maintained in a bank in Anadarko, Oklahoma; thereafter all payroll checks were paid through the general account at Fidelity. Payroll checks paid through this account were easily identifiable; the word "payroll" was prominently printed on the upper left hand corner of the face of the check. These checks were for net wages only. CDI withheld income and FICA taxes and, because it had no other funds, depended on the bank to honor checks drawn in the amount of the withholdings and deposited with the bank.

During a part of the second quarter of 1973, officials at the bank thought CDI's financial situation would improve and CDI would be able to complete the contract on a profitable basis. But KHA did not continue to provide CDI with work orders sufficient to justify continued production. On June 26 the bank dishonored all CDI checks presented on June 25 through the normal banking channels. Among those checks

was one for the taxes withheld from wages paid in April, the first month of the second quarter. Thereafter, the bank returned all CDI checks unprocessed, among them checks for taxes withheld from wages paid during May and June. On June 29 the bank shut the company down, foreclosing on its security interests, and began to liquidate the assets.

Thereafter, some homes built by CDI before its operations were shut down were sold to KHA. In connection with this transaction, KHA demanded that the bank honor payroll checks that had been dishonored during the second quarter. Had the bank refused to pay these wages, KHA would have paid them and would have sent to the bank the net proceeds, if any. Fidelity acceded, honoring some of those checks and issuing cashier's checks drawn by the bank for the remainder. Proceeds from the sale were used by the bank to reduce the overdraft status of CDI's account. Taxes withheld from these, as well as the prior payroll checks, were not paid, the only exception being those paid by the bank in order to initiate this refund suit.

## I

■ To be held liable under I.R.C. § 3505(b)[3], Fidelity must have supplied funds for the specific purpose of paying wages and must have had actual knowledge that CDI did not intend to or would not be able to timely deposit or pay the income and FICA taxes required to be withheld from the wages of its employees. Notwithstanding the verdict of the jury, we believe the evidence conclusively establishes liability in this case.

The bank supplied funds for the specific purpose of paying wages by honoring payroll checks that were drawn in excess of the credit line. It is true, as the bank argues, that a lender making an ordinary working capital loan with knowledge that some funds may be used for payroll purposes does not violate section 3505(b). *See* Treas.Reg. § 31.3505–1(b)(3); S.Rep. No. 1708, 89th Cong., 2d Sess. (1966), *reprinted in* [1966] U.S.Code Cong. & Admin.News, pp. 3722, 3744. In this case, however, each check honored after the $1,000,000 lending limit was exceeded and the account was in an overdraft position constituted a separate loan. Each check was individually initialled and approved for payment by Mickey Johnson, the bank's loan officer; each payroll check prominently bore the notation "payroll" on its face and was known by the bank to be for the specific purpose of paying wages; and each was an overdraft. Although the overdrafts were secured by the agreements relating to the general credit line, the bank, through Mickey Johnson, *see* I.R.C. § 6323(i)(1), knew it was supplying funds specifically for wages. *See United States v. Park Cities Bank & Trust Co.*, 481 F.2d 738 (5th Cir. 1973).

The bank had actual notice that CDI would not be able to make timely deposit or payment of the taxes due for the second quarter. At least after January 1973, when CDI's payroll account at Anadarko was closed and all creditors were paid from the general account with Fidelity, that bank had to know that without loans from it CDI would be unable to pay taxes due. All assets of CDI were pledged to the bank; but more importantly, the bank had control of all CDI's income. The KHA contract proceeds, CDI's only income, were sent directly to the bank, which applied them to

---

**3.** I.R.C. § 3505(b) provides

If a lender, surety, or other person supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of such employer, with actual notice or knowledge (within the meaning of section 6323(i)(1)) that such employer does not intend to or will not be able to make timely payment or deposit of the amounts of tax required by this subtitle to be deducted and withheld by such employer from such wages, such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) which are not paid over to the United States by such employer with respect to such wages. However, the liability of such lender, surety, or other person shall be limited to an amount equal to 25 percent of the amount so supplied to or for the account of such employer for such purpose.

the reduction of the company's indebtedness. Thus, every time the bank supplied funds for payment of wages it had to know it would be requested to supply the funds for paying the withholding taxes. This, we believe, fits well within the situations envisioned for application of section 3505(b).

It is thus clear that the trial court should have entered judgment in favor of the United States on this issue. Because section 3505(b) limits the penalty to 25% of the amount of funds supplied for payment of wages, however, further proceedings to determine the amount of the penalty recoverable by the government will be necessary before judgment in favor of the government can be entered.

## II

The government also asserts that the evidence conclusively shows the bank to be liable under I.R.C. § 6672[4] for the unpaid withholding taxes. Section 6672 imposes a one hundred percent penalty in the amount of unpaid withholding taxes on any person, other than the employer, who was responsible for the collection and payment of these taxes, but who willfully fails to perform any of these acts. See Slodov v. United States, 436 U.S. 238, 246–50, 98 S.Ct. 1778, 1784–87, 56 L.Ed.2d 251 (1978). Thus, for liability to attach, the bank must have been a "responsible person" "willfully" failing to perform.

The administrative practice, at least, is that once net wages are paid to the employee, taxes withheld are credited to that employee for income and social security tax purposes, whether or not the employer pays them over to the Internal Revenue Service (IRS). Id. at 243 n.4, 98 S.Ct. at 1783 n.4.

Thus section 6672 was enacted to impose personal liability upon those responsible for transmitting these trust funds should they divert the money to pay other pressing creditors. The section is applied to persons[5] who have sufficient control to divert the funds away from the IRS, usually officers and supervisory employees. But the courts have fashioned a functional definition of "responsible person" to include some who do not hold any official position with the company. See, e. g., Neckles v. United States, 579 F.2d 938 (5th Cir. 1978). Lenders and employees of lenders have been considered liable under section 6672 in particular circumstances. Adams v. United States, 504 F.2d 73 (7th Cir. 1974); Mueller v. Nixon, 470 F.2d 1348 (6th Cir. 1972), cert. denied, 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1001 (1973); Turner v. United States, 423 F.2d 448 (9th Cir. 1970); Pacific Nat'l Ins. Co. v. United States, 422 F.2d 26 (9th Cir.), cert. denied, 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269 (1970). Contra, United States v. Hill, 368 F.2d 617 (5th Cir. 1966).

Considering the infinite degrees of control that might be exercised by a lender, we cannot agree with the apparent holding of United States v. Hill, supra, that a bank lender may never come under the ambit of section 6672. But we do believe that the emphasis of the section upon the persons whose duty to the employer is "to collect . . . account for, and pay over" the tax but who "willfully" fail to do so, requires more control by a bona fide lender for liability than does I.R.C. § 3505(b).

Viewed in the light most favorable to the bank, the evidence in the instant case shows no more than an arrangement by which Fidelity made a series of loans to

---

4. I.R.C. § 6672 provides

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and

paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

5. I.R.C. § 6671(b) provides that the

term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

CDI for specific purposes. It does not show that the bank decided which creditors were to be paid, or that it initiated payment decisions. Thus, the jury was entitled to conclude the bank was not a responsible person within the meaning of section 6672. *See Haffa v. United States,* 516 F.2d 931 (7th Cir. 1975).

In reaching this conclusion, we are mindful that because of CDI's complete financial dependence on the bank, Fidelity could have coerced CDI into fulfilling its withholding tax obligations. But we are unwilling to hold that the bank had a duty to do so when it had not otherwise intruded into the financial or operational aspects of CDI's business; such a holding would effectively extend the scope of section 6672 to precisely duplicate the coverage of I.R.C. § 3505, specifically passed by Congress to impose liability upon lenders of funds to be used for payrolls.

▮ In spite of our conclusion that the government's motion for judgment n. o. v. on the question of section 6672 liability was properly denied, we must reverse this judgment because the jury was improperly instructed concerning the risk of nonpersuasion. In this circuit it has been established that the counterclaim defendant bears the risk of nonpersuasion in refund suits if the government offers into evidence the tax assessment. *G. M. Leasing Corp. v. United States,* 514 F.2d 935, 941 (10th Cir. 1975), *rev'd on other grounds,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977). This rule applies to suits based on section 6672. *Liddon v. United States,* 448 F.2d 509, 513–14 (5th Cir. 1971), *cert. denied,* 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972); *Psaty v. United States,* 442 F.2d 1154 (3d Cir. 1971); *Lesser v. United States,* 368 F.2d 306 (2d Cir. 1966). The trial court here instructed the jury that the government bore the risk of nonpersuasion on its counterclaim. This was error.[6]

We do not understand the government to argue it is entitled to recover twice for CDI's unpaid taxes—once each under sections 3505(b) and 6672. In view of our holding on section 3505(b) liability it may be unnecessary to try the case again; but if the 25% limitation in that section will not cover the entire sum claimed by the government, a retrial on section 6672 liability may be necessary. There was before the jury sufficient evidence to raise factual questions concerning liability under section 6672; we will not speculate how the jury would have resolved those questions had it been properly instructed. Thus, remand is required on this issue.

### III

▮ Finally, the government asserts the trial court erroneously awarded attorney's fees to Fidelity. In view of our disposition of this appeal, the bank was not a "prevailing party" within the meaning of 42 U.S.C. § 1988; the order awarding the fees is therefore reversed and we need not consider the question whether a prevailing party must demonstrate the government's suit was filed in bad faith or was frivolous, unreasonable or without foundation.

The judgments are reversed and the case is remanded for proceedings consistent herewith.

**6.** The government's own tendered Instruction No. 17 placed the burden of proof on the government as to the section 3505(b) claim. *See also* Sen.Rep. No. 1708, 89th Cong., 2d Sess. (1966), *reprinted in* [1966] U.S.Code Cong. & Admin.News, pp. 3722, 3744. Its brief is ambiguous, but in light of this earlier position taken by the government, we construe its challenge as only relating to the trial court's instruction that it also has the burden of proof on the section 6672 claim.