**COMMONWEALTH NATIONAL BANK OF DALLAS, et al., Plaintiffs-Appellants Cross Appellees,**

v.

**UNITED STATES of America, et al., Defendants-Appellees Cross Appellants.**

**No. 80–1953.**

United States Court of Appeals, Fifth Circuit.

Jan. 15, 1982.

---

Durant, Mankoff, Davis, Wolens & Francis, Bruce A. Budner, Turner, Hitchins, McInerney, Webb & Hartnett, John W. Hicks, Jr., Dallas, Tex., for Commonwealth Nat. Bank and Pittman.

Allen, Knuths, Cassell & Short, Robert F. Henderson, Dallas, Tex., for Dennie.

Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., Dept. of Justice, Michael L. Paup, Chief, Appellate Section, Tax Div., Dept. of Justice, Washington, D. C., Martha Joe Stroud, Asst. U. S. Atty., Dallas, Tex., John F. Murray, Gilbert S. Rothenberg, R. Bruce Johnson, Attys., Tax Div., Dept. of Justice, Washington, D. C., for the U. S.

Before POLITZ and RANDALL, Circuit Judges, and PARKER *, District Judge:

RANDALL, Circuit Judge:

This is an appeal from a judgment of the district court, pursuant to a special jury verdict, holding the plaintiffs-appellants herein—the lending bank to a corporate employer, the chief executive officer of the lending bank and the chief executive officer of the corporate employer—each liable for the 100% penalty imposed by I.R.C. § 6672 when the corporate employer failed to pay over to the United States federal employment taxes withheld from its employees. The lending bank and its chief executive officer assert that the decision of this court in *United States v. Hill*, 368 F.2d 617 (5th Cir. 1966), mandated the entry by the district court of a directed verdict in their favor and now mandates reversal of the judgment against them. The United States argues that this case is factually distinguishable from *Hill* or, alternatively, that *Hill* is no longer "good law" as a result of the decision of the Supreme Court in *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978), and several decisions in other circuits distinguishing or declining to follow *Hill*. We conclude that what we view as the basic principles underlying this court's decision in *Hill*, and numerous other decisions of this court under § 6672 as well, continue to be good law and, when applied to the facts of this case, require us to affirm the judgment of the district court holding each of the plaintiffs-appellants liable for the 100% penalty under § 6672.

I. FACTS.

Concrete Pan Forms, Inc. ("CPF") was a Texas corporation which operated as a subcontractor handling the concrete construction portions of major construction jobs. Richard L. Dennie, a plaintiff-appellant herein, was one of the original incorporators of CPF and served as CPF's chairman of the board, president and treasurer from 1965 until April of 1977. During the period in issue in this case, Dennie owned 93.75% of the stock of CPF.

* Chief Judge of the Middle District of Louisiana, sitting by designation.

Dennie became acquainted with John H. Pittman, another plaintiff-appellant herein, in 1966 while Pittman was serving as the president of the White Rock National Bank. Both CPF and Dennie, individually, were clients of that bank. When Pittman subsequently formed the Commonwealth National Bank of Dallas ("Commonwealth" or the "bank"), another plaintiff-appellant herein, CPF and Dennie moved their respective accounts to Commonwealth, where they were maintained throughout the period in issue in this case. Commonwealth, Pittman and Dennie are sometimes referred to collectively herein as the "taxpayers." Pittman served as chairman of the board and president of Commonwealth from 1970 throughout the period in issue in this case, and he was also a substantial stockholder in Commonwealth.

CPF maintained two accounts at Commonwealth. One account was a general operating account which was used to pay suppliers and other bills; the other account was used exclusively as a payroll account and was funded by transfers from the general account.

In 1974, Commonwealth made a $400,000 loan to CPF which was guaranteed by the Small Business Administration. CPF's indebtedness to Commonwealth was secured by, *inter alia*, a security interest in all CPF's accounts receivable and the proceeds therefrom. In accordance with instructions from Commonwealth, CPF ordered its customers to make payment to CPF by delivering checks made payable jointly to Commonwealth and CPF. On April 16, 1976, Commonwealth arranged a $70,000 line of credit for CPF (increased to $90,000 on March 30, 1977).

In addition to these loans, Commonwealth also permitted CPF large overdrafts on its general account. From October 1976 through April 1977, the taxable period in issue in this case, CPF's general account at Commonwealth was in a continuously overdrawn state, despite the fact that CPF periodically deposited progress payments from various construction jobs into that account. The maximum amount of the overdraft each month ranged from a low of approximately $98,500 in October 1976 to a high of approximately $237,000 in April 1977.

The record reflects that each Friday, CPF prepared payroll checks for its employees and tax deposit checks for the federal employment taxes. During the period from October, 1976 to January or February 1977, these payroll and tax deposit checks, together with the accompanying tax forms, were delivered by CPF's bookkeeper either to Pittman or to John Douglas, a vice president and loan officer of Commonwealth. While the payroll checks were honored, the checks that were written to cover federal employment taxes were not. The tax deposit checks were kept by Douglas in a desk drawer in his office at Commonwealth. In January or February of 1977, Pittman returned the accumulated federal tax deposit checks to CPF. After that time, CPF's bookkeeper continued to prepare tax deposit checks, but the checks were kept by her in her own desk drawer.

While the foregoing facts were largely undisputed at trial, the question of who was, in fact, responsible for the failure to pay federal employment taxes was the subject of highly conflicting testimony. In view of the fact that the United States sought to assess the 100% penalty provided by I.R.C. § 6672[1] against each of Commonwealth, Pittman and Dennie, at trial Commonwealth and Pittman took the position that Dennie exercised exclusive control over the payment of CPF's federal employment taxes, and Dennie took the position that

---

1. I.R.C. § 6672, as in effect in 1976, provided as follows:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

Commonwealth and Pittman were primarily responsible for determining which of CPF's many creditors (including the United States) were to be paid. Since the jury found that each of Commonwealth, Pittman and Dennie had a duty and responsibility to collect or pay over federal employment taxes to the United States, the evidence in favor of the United States as to the duty and responsibility of each, and the inferences reasonably drawn therefrom, must be accepted as true. *United States v. Hill*, 368 F.2d 617, 619 (5th Cir. 1966).

The record reflects that Dennie, as the chief executive officer of CPF, was responsible for supervising the payroll and check writing functions of CPF. He knew that federal employment taxes were not being paid during the taxable period in issue in this case, and he knew that other creditors were being paid. Beginning in the latter part of 1976, Dennie delivered the tax deposit checks to Pittman at Commonwealth with instructions that those checks covering the federal employment taxes should not be paid. As time went on, Dennie submitted lists to Pittman indicating which checks (invariably excluding the tax deposit checks) "had to be paid." According to Dennie, "the government can wait."

Pittman, in turn, knew that the federal employment taxes were not being paid. During the period from October 1976 until January or February 1977, the checks covering the federal employment taxes were accumulated in the desk drawer of Douglas. Pittman frequently conferred with Dennie in order to decide which creditors were going to be paid. Early in 1977, Pittman began going over the list of checks submitted by CPF and specifically deciding which ones would be honored and which ones would not. In some cases, Pittman signaled his approval of those checks to be honored by initialing the upper corner of the checks.

The total amount of payroll taxes withheld from CPF's employees but not turned over to the United States was $127,411.24. The Commissioner of Internal Revenue thereafter determined that Commonwealth, Pittman and Dennie were all persons who willfully failed to collect, truthfully account for or pay over such taxes within the meaning of § 6672. Consequently, the Commissioner assessed penalties against each of them in an amount equal to 100% of the taxes not paid over. The taxpayers paid several portions of the assessment and then sued for refunds in federal district court. The United States contested their rights to refunds and, in addition, counterclaimed for the amounts remaining unpaid on the assessments. In addition, the United States asserted liability against Commonwealth and Pittman under I.R.C. § 3505(b).[2]

After consolidation of the cases for trial, the district court directed a verdict against the United States on the issue of Pittman's liability under § 3505(b). The United States does not contest that determination in this appeal. Over the United States' objection, the district court also determined, as a matter of law, that Commonwealth's liability under § 3505(b) should be based on 25% of the total net payroll, minus a portion of the accounts receivable deposited by CPF into its general account at Commonwealth. In so doing, the district court rejected the argument of the United States that each transfer of funds to the payroll account from the general account was, in view of

---

2. I.R.C. § 3505(b), as now constituted and as constituted in 1976, provides as follows:

PERSONAL LIABILITY WHERE FUNDS ARE SUPPLIED.—If a lender, surety, or other person supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of such employer, with actual notice or knowledge (within the meaning of section 6323(i)(1)) that such employer does not intend to or will not be able to make timely payment or deposit of the amounts of tax required by this subtitle to be deducted and withheld by such employer from such wages, such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) which are not paid over to the United States by such employer with respect to such wages. However, the liability of such lender, surety, or other person shall be limited to an amount equal to 25 percent of the amount so supplied to or for the account of such employer for such purpose.

the overdrawn status of the general account, an additional extension of credit to CPF for the specific purpose of paying wages. The court, instead, accepted Commonwealth's argument that a pro rata portion of the accounts receivable payments received by CPF during this period should be considered as the source of funds supplied for some of the wages and that, accordingly, Commonwealth should be treated as supplying only the remainder. Under this computation, Commonwealth provided a maximum of $161,199.60 in wages, rather than the $400,000 argued for by the United States, and the § 3505(b) liability was limited to $40,299.90—25% of that amount.

The case was submitted to the jury for a determination of the liability of each of Commonwealth, Pittman and Dennie under § 6672 and Commonwealth's liability under § 3505(b) as well. The jury rendered special verdicts in favor of the United States, and the district court entered judgment accordingly.

Each of Commonwealth, Pittman and Dennie appeals from the judgment holding it or him liable under § 6672, and Commonwealth appeals from the judgment holding it liable under § 3505(b) as well. The United States cross appeals from the district court's determination that Commonwealth's § 3505(b) liability is limited to $40,299.90.

## II. TAXPAYERS' APPEALS REGARDING § 6672 LIABILITY.

*Commonwealth's and Pittman's Appeal.*[3]

Commonwealth and Pittman assert that the district court erred in failing to grant their motion for a directed verdict under § 6672. They argue that under *United States v. Hill*, 368 F.2d 617 (5th Cir. 1966), it is clear that no lending bank or officer thereof can be liable for the 100% penalty under § 6672. Commonwealth and Pittman describe the factual situation facing this court in *Hill* as "so close to that in this case as to be logically indistinguishable." Brief of Commonwealth and Pittman at 8. In related arguments, Commonwealth and Pittman assert that the district court erred in submitting to the jury an incorrect definition of the term "responsible person" under § 6672.[4] Commonwealth and Pittman

**3.** At trial, counsel for Pittman at one point argued that Pittman should not have any individual liability under § 6672 because he was acting at all times as an officer of Commonwealth, as distinguished from acting in his individual capacity. However, on appeal Pittman's asserted grounds for reversal of the district court's judgment against him are the same as Commonwealth's. Accordingly, we need and do not address the question whether different standards do or should apply to the liability of an officer of a lending bank than apply to the liability of an officer of the corporate employer.

**4.** The district court submitted the following definition of the term "responsible person":

Responsible Persons: Every corporation which is an employer must have some person or other agency who has the duty or responsibility of withholding and paying over those taxes which the law requires to be withheld and paid over to the Government. There may be more than one responsible person, but there is always at least one. Thus, there may be more than one person liable for the 100 percent penalty.

The statutes imposing the 100 percent penalty refer to "any person" rather than "the person." In that connection, if you find that there were other individuals or entities, in addition to the parties to this lawsuit, who had a duty to collect and pay over these

taxes, I instruct you that the failure of such other persons does not excuse any of the present parties for their failure, if any, or prevent their being liable for the penalty imposed by the law.

The term "responsible person" includes any person or entity who is connected or associated with the corporation-employer in such a manner that such person or entity has the power to see that the taxes are paid, has the power to make final decisions concerning disbursement of funds of the corporation, or has the power to determine which creditors are to be paid and when they are to be paid. "Final" means significant rather than exclusive control over the disbursal of corporate funds. The meaning of the term "responsible" is very broad and is not limited to the person who actually prepares the payroll checks or the tax returns, although it may include such person. A "responsible person," within the meaning of the law, is not limited to a person in the sense of a human being as we customarily understand the word, but may include an individual, a bank, a creditor, or a corporation.

A responsible person need not even be authorized to draw checks for the corporation so long as he has the power to decide who will get such checks. In other words, the "responsible person" is any person or other

argue that the definition submitted was overly broad and misleading and misstated the law in this circuit as enunciated in *Hill*. Finally, Commonwealth and Pittman assert that the district court erred in submitting as a part of the charge the following instruction on the duty to withhold under § 6672:

> Every corporation which is an employer must have some person or other agency who has the duty or responsibility of withholding and paying over those taxes which the law requires to be withheld and paid over to the Government.

Commonwealth and Pittman argue that unless that instruction is supplemented, as they requested, to indicate that the duty to withhold and pay over is usually lodged with a corporate officer of the employer, the instruction given creates the impression that it is common for third parties unconnected with a corporation-employer, who make a secured loan to such corporation-employer, to be found liable under the penalty provisions of § 6672.

Before addressing specifically the argument of Commonwealth and Pittman regarding *Hill*, it would be helpful to describe the statutory framework involved in this case. Under the Internal Revenue Code, every *employer* is required to withhold federal income and social security taxes from the wages of its employees. I.R.C. §§ 3102(a)[5] and 3402(a) and (d).[6] The with-

entity who can effectively determine how corporate funds are to be spent and which bills should or should not be paid or when they should be paid. A person who is not an official of the employer, or a corporation unrelated to the employer, may also be a "responsible person" if, because of a peculiar relationship with the employer, such person or corporation controls the finances of the employer.

You are instructed that the making of a secured loan to a corporation does not, in and of itself, render a person liable for the payment of the corporation's withholding taxes.

There are actually three separate duties involved with the handling of withheld income and social security taxes. These are (1) to collect the taxes out of the employees' paychecks, (2) to account for those taxes during the interim period between collection and payment over, and (3) to pay over the taxes to the Government when they are due. It is not necessary for a responsible person to have been responsible for the breach of all three duties, but the breach of any one duty is sufficient for the imposition of the tax.

5. I.R.C. § 3102(a), as in effect in 1976, provided as follows:

REQUIREMENT.—The tax imposed by section 3101 shall be collected by the employer of the taxpayer by deducting the amount of the tax from the wages as and when paid. An employer who in any calendar quarter pays to an employee cash remuneration to which paragraph (7)(B) or (C) or (10) of section 3121(a) is applicable may deduct an amount equivalent to such tax from any such payment of remuneration, even though at the time of payment the total amount of such remuneration paid to the employee by the employer in the calendar quarter is less than $50; and an employer who in any calendar

year pays to an employee cash remuneration to which paragraph (8)(B) of section 3121(a) is applicable may deduct an amount equivalent to such tax from any such payment of remuneration, even though at the time of payment the total amount of such remuneration paid to the employee by the employer in the calendar year is less than $150 and the employee has not performed agricultural labor for the employer on 20 days or more in the calendar year for cash remuneration computed on a time basis; and an employer who is furnished by an employee a written statement of tips (received in a calendar month) pursuant to section 6053(a) to which paragraph (12)(B) of section 3121(a) is applicable may deduct an amount equivalent to such tax with respect to such tips from any wages of the employee (exclusive of tips) under his control, even though at the time such statement is furnished the total amount of the tips included in statements furnished to the employer as having been received by the employee in such calendar month in the course of his employment by such employer is less than $20.

6. I.R.C. § 3402(a), as in effect in 1976, provided in pertinent part as follows:

REQUIREMENT OF WITHHOLDING.—Except as otherwise provided in this section, every employer making payment of wages shall deduct and withhold upon such wages a tax determined in accordance with tables prescribed by the Secretary. . . .

I.R.C. § 3402(d), as now constituted and as constituted in 1976, provides as follows:

TAX PAID BY RECIPIENT.—If the employer, in violation of the provisions of this chapter, fails to deduct and withhold the tax under this chapter, and thereafter the tax against which such tax may be credited is paid, the tax so required to be deducted and

held sums are commonly referred to as "trust fund taxes," reflecting the provision of the Internal Revenue Code that such withholdings are deemed to be a "special fund in trust for the United States." I.R.C. § 7501(a).[7]

Section 6672, on the other hand, imposes a liability separate and distinct from the employer's liability for the withheld taxes, and it imposes that liability upon persons other than the employer. Section 6672 provides, *inter alia*:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over . . . .

Section 6671(b) defines "person," for purposes of § 6672, as follows:

> The term "person", as used in this subchapter, *includes* an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

I.R.C. § 6671(b) (emphasis added). The use of the word "includes" in § 6671(b) is significant. As the Court of Appeals for the Ninth Circuit concluded in *Pacific National Insurance Company v. United States*, 422 F.2d 26, 30 (9th Cir.), *cert. denied*, 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269 (1970), it indicates that:

> the liability imposed by section 6672 upon those other than the employer is not re-stricted to the classes of persons specifically listed—officers or employees of corporations and members or employees of partnerships. "[B]y use of the word 'include[s]' the definition suggests a calculated indefiniteness with respect to the outer limits of the term" defined. *First National Bank In Plant City, Plant City, Florida v. Dickinson*, 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969). As we said in *United States v. Graham*, 309 F.2d 210, 212 (9th Cir. 1962): "The term 'person' does include officer and employee, but certainly does not exclude all others. Its scope is illustrated rather than qualified by the specific examples."
>
> The language is broad enough to reach corporations and other artificial entities, as well as natural beings. The Code expressly provides that unless "otherwise distinctly expressed or manifestly incompatible with the intent * * The term 'person' shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation." 26 U.S.C. § 7701(a)(1).

*Id.* (footnotes omitted).

The Ninth Circuit went on in *Pacific National* to define what it considered to be the coverage of §§ 6672 and 6671(b):

> We may assume that when the employer is a corporation the statutory language does limit liability under section 6672 to those who exercise the corporation's power to determine whether or not to pay over the withheld tax. But the definition of "persons" does not require that they be formally vested with the office or employed in the position normally charged with this function; the definition simply "includes" such persons. Indeed, the lan-

---

withheld shall not be collected from the employer; but this subsection shall in no case relieve the employer from liability for any penalties or additions to the tax otherwise applicable in respect of such failure to deduct and withhold.

**7.** I.R.C. § 7501(a), as now constituted and as constituted in 1976, provides as follows:

GENERAL RULE.—Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose.

guage itself does not require that they be officers or employees of the corporation at all, so long as they are in fact responsible for controlling corporate disbursements. As we held in *Graham, supra,* 309 F.2d at 212, "the section must be construed to include all those so connected with a corporation as to be responsible for the performance of the act in respect of which the violation occurred"; it reaches those who have "the final word as to what bills should or should not be paid, and when." *Wilson v. United States,* 250 F.2d 312, 316 (9th Cir. 1958). *See also White v. United States,* 372 F.2d 513, 517, 178 Ct.Cl. 765 (1967).

This construction effectuates the underlying purpose of section 6672. The legislative history is uninformative, but it is evident from the face of the section that it was designed to cut through the shield of organizational form and impose liability upon those actually responsible for an employer's failure to withhold and pay over the tax. It would frustrate this purpose needlessly to imply a condition limiting the application of the section to those nominally charged with controlling disbursements of a corporate employer, thus immunizing those who, through agreement with or default of those nominally responsible, have exercised this corporate function in fact.

*Id.* at 30–31 (footnotes omitted). The Ninth Circuit in *Pacific National* affirmed the judgment of the district court to the effect that Pacific National was liable under § 6672 to the United States for 100% of the federal employment taxes withheld from the employees of Central States Construction and Equipment Company because Pacific National (a surety) exercised complete dominion and control over funds belonging to Central States and was the person who decided which creditors of Central States were to be paid and when.

It is apparent that the definition of the term "responsible person" included in the instructions given by the district court in this case—i.e., any person or entity who is connected or associated with the corporation-employer in such a manner that such person or entity has the power to see that the taxes are paid, to make final decisions concerning disbursement of funds of the corporation or to determine which creditors are to be paid and when they are to be paid—would find favor in the Ninth Circuit insofar as it permits the jury to find that a lending bank to a corporate employer may, if the circumstances described therein obtain, be a person liable under § 6672 for 100% of the federal employment taxes withheld from the employer's employees. The question presented by this case is whether that instruction is a correct statement of the law in the Fifth Circuit. Commonwealth and Pittman, focusing in their brief on appeal almost exclusively on *Hill,* which they describe as factually indistinguishable, assert that it is not. We think, however, that Commonwealth and Pittman err in focusing narrowly on *Hill,* thereby failing to give due consideration to other cases in this circuit that have addressed the term "responsible person." We think they err further in describing *Hill* as factually indistinguishable from this case.

Turning first to the cases in this circuit that address the question who is a "responsible person," we agree with the United States that this court has generally taken a broad view of who qualifies as a "responsible person" within the meaning of § 6672. In *Liddon v. United States,* 448 F.2d 509 (5th Cir. 1971), *cert. denied,* 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972), this court addressed the liability of a 50% shareholder and a director of a corporate employer under § 6672. Liddon contended that he was not a "responsible person" under § 6671(b) because he was not "under a duty" to collect and pay over the taxes. This court rejected that argument, citing extensively from *United States v. Graham,* 309 F.2d 210 (9th Cir. 1962), the Ninth Circuit case which also formed the basis for the Ninth Circuit's decision in *Pacific National, supra.* Graham had also contended that he was not a person under § 6672 required to collect, account for and pay over the taxes since he was not a disbursing officer of the corporate employer and had no authority to draw

or sign checks on the employer's accounts. As the Fifth Circuit noted, Liddon's and Graham's argument was "answered" by the Ninth Circuit, as follows:

. . . .

This again, we feel, is too narrow a construction. The statute's purpose is to permit the taxing authority to reach those responsible for the corporation's failure to pay the taxes which are owing. It would make little sense to confine liability to those performing the mere mechanical functions of collection and payment when such functions are performed simply in accordance with the executive judgment of others whose duty it is to decide for the corporation in this area.

*Liddon v. United States*, 448 F.2d at 512, quoting *United States v. Graham, supra*, at 212. This court went on in *Liddon* to set forth the following quotation from an annotation in 22 A.L.R.3d 850, which it described as "well summariz[ing] the holding of the courts:"

The courts have taken a broad view of who is a person responsible for collecting and paying over taxes required to be withheld from employees' wages. Although the mere holding of corporate office does not of itself make for personal liability on the part of the officer, liability for the penalty is not confined to "disbursing officers" or officers with authority to draw or sign checks.

In reaching a determination with respect to the person or persons upon whom to impose responsibility and liability for the failure to pay taxes, the courts have tended to disregard the mechanical functions of the various corporate officers, and, instead, have searched for the person or persons who could have seen to it that the taxes were paid, a person with ultimate authority over expenditures of corporate funds who can fairly be said to be responsible for the corporation's failure to pay over its taxes.

*Id.* at 512–13.

*Liddon* makes clear that the test of liability under § 6672 is indeed a functional one: so long as a person has ultimate authority over expenditures of corporate funds and effective power to see to it that federal employment taxes withheld by an employer are paid, he or she qualifies as a responsible person. *Accord, First National Bank in Palm Beach v. United States*, 591 F.2d 1143, 1149 (5th Cir. 1979) ("If individuals dominate a corporation, that relationship is relevant to whether they are 'responsible persons' within the meaning of § 6672. We are concerned with actual control and economic reality, not paper facades.") It is not necessary that such a person be an officer or employee of the employer, *see Genins v. United States*, 489 F.2d 95 (5th Cir. 1974) (holding that the sole shareholder of a corporation which was, in turn, a 50% partner in the employer was a "responsible person" under § 6672), or that such a person have, within the corporate structure, the direct personal duty to collect, account for and pay over the withheld taxes, *see Brown v. United States*, 464 F.2d 590 (5th Cir. 1972), *cert. denied*, 410 U.S. 908, 93 S.Ct. 962, 35 L.Ed.2d 270 (1973).

We come then to *Hill* and the question whether a corporate employer's lending bank or an officer of such a bank may be a responsible person under § 6672. *Hill*, like this case, involved in relevant part a jury verdict under § 6672 against Messrs. Hill and Moore, officers and stockholders of Hill and Moore, Inc. (also a construction company), and against City National Bank, the company's lending bank, and Jack Jeffus, an officer of that bank. There were two taxable periods involved in *Hill* with which we are concerned, and the jury verdict differed for each period:

(1) Hill, Moore, the bank and Jeffus were found liable for the 100% penalty for the fourth quarter of 1961;

(2) Moore and Hill were found not liable for the penalty for the first quarter of 1962 (a decision which the United States did not appeal), but the bank and Jeffus were found liable.

We agree with all the parties that the facts in *Hill* are critical (as indeed they are in any § 6672 case), and we set forth those facts at some length so that we will be in a position

to compare those facts with the facts in this case:

(1) At all pertinent times during both quarters, the bank and Jeffus knew that the company had withheld federal employment taxes on its employees and had not remitted those taxes to the United States.

(2) By virtue of assignments executed and delivered in 1961, the entire income of the company from its construction projects was the property of the bank.

(3) The company had unrestricted use of the funds in its bank account during the fourth quarter of 1961. Jeffus testified that the bank never had the right to refuse to pay any check drawn if the company had funds available to cover it.

(4) By January 1962 the company was in severe financial difficulty, with liabilities exceeding assets by approximately $400,000. The situation was explained to the bank in a conference with Jeffus on January 18, 1962.

(5) During the first three weeks of February, 1962, the bank made several loans to the company by allowing contract progress payments assigned to the bank to be deposited in the corporate bank account for the payment of bills essential to keep the jobs going and cover net payrolls.

(6) From January 18 through February 21, 1962, all checks for $500 or more were approved by Jeffus before payment. Jeffus refused to honor overdrafts, and thus make loans, except for essential bills, and there was an agreement that Hill and Moore would advise the bank of large disbursements.

(7) Several deposits were made into the company's bank account during February 1962 which did *not* originate from the assigned contracts.

This court began its opinion by setting forth, in addition to §§ 6672 and 6671(b), a quotation from *United States v. Graham*, 309 F.2d 210, 212 (9th Cir. 1962), to the effect that the term "person" must be construed to include all those "so connected with a corporation as to be responsible for the performance of the act in respect of which the violation occurred." The court then proceeded to affirm the judgment against Messrs. Hill and Moore, the operating officers and sole stockholders of the company, for the 100% penalty for the fourth quarter of 1961. The court noted that the desire to continue in business is not justification for violating the trust imposed by the law to pay federal employment taxes. In response to the argument of Hill and Moore that the bank and Jeffus should alone be responsible for that penalty, the court stated that the most important factors were that "the bank did not interfere with the management of the corporation and that the corporation was free to draw on its own account to the extent that it had funds in the bank." *Hill*, 368 F.2d at 622. The court noted that Hill and Moore deposited more than enough of their own funds or unencumbered funds of the company to pay the taxes for the fourth quarter of 1961, and instead the funds went to pay other creditors.

This court then went on to conclude that the district court was correct in granting a judgment notwithstanding the verdict as to the bank and Jeffus. The court noted that "[w]hile placing the duty to pay over withholding taxes on the responsible person, the courts have indicated a strong preference to impose liability only within the corporate or other business structure.... We have been cited no case, nor have we found one, in which a bank appears to have been held liable under Section 6672 for the withholding taxes of a borrower." *Id.* at 622. The court went on to discuss the legislative history of certain sections of the Internal Revenue Code adopted subsequent to § 6672 which the court read as indicating that prime contractors, and by analogy, lending banks, cannot be required to provide federal employment taxes to be withheld by the employer. The court stated, however, that it was not necessary to rely on the intent of Congress to support the conclusion that it went on to reach. The court emphasized that all that the bank did, and all that Jeffus as an officer at the bank did, was to

permit the company to retain from progress payments funds which absolutely belonged to bank and thereafter to use those funds, in addition to loans, to keep the company alive and complete its projects. The court stated that the fact that the bank allowed the company to retain and use some of the funds belonging to the bank could not be transposed into an assumption of tax liability by the bank. The court noted that Messrs. Hill and Moore were put on notice from the beginning that none of the grace funds could be used to pay taxes. The court concluded: "That the Bank exercised a veto power over corporate checks, funded by this method, to insure their use to keep the company alive nowhere brings the Bank within the penal provisions of the statute." *Id.* at 623. Finally, the court went on to state: "We are particularly driven to this view by the following language in the brief for the government:

Appellant's [Hill and Moore, Inc.] control over corporate funds was not impaired by the bank. After the initial conference with Jeffus, the bank agreed to loan to the corporation funds to complete jobs in progress. The only control which the bank exercised during this period was in connection with the funds which it loaned. Taxpayer Hill admitted at trial that he understood the bank's refusal to honor checks for taxes drawn on these funds to be merely a statement that the bank would not loan the corporation funds for the taxes. Certainly this refusal to make a loan did not place the bank in control of the corporation's checking account or alter appellants' control of the corporation."

*Id.*

A fair summary of the holdings of this court in *Hill* with respect to the bank and Jeffus and the two taxable periods involved is as follows:

(1) During the fourth quarter of 1961, the bank did not interfere with the management of the company; the company was free to draw on its own account to the extent that it had funds in the bank; and Hill and Moore deposited more than enough of their own funds or unencum-bered funds of the company to pay the taxes for that quarter, and instead paid other creditors. Under these circumstances, the bank was not a responsible person.

(2) During the period from January 18, 1962 through February 21, 1962 (when the bonding company entered the picture), the company's control over corporate funds was not impaired by the bank. The only control which the bank exercised during the period was in connection with the funds that it loaned, and it refused to loan those funds for the payment of taxes. Several deposits were made into the company's bank account during February 1962 which did not consist of progress payments on contracts assigned to the bank or loan proceeds. The refusal to make a loan to pay employment taxes did not place the bank in control of the corporation's checking account or alter Hill and Moore's control of the corporation.

■ We read *Hill* as holding that, in a situation in which there are funds available to a corporate employer for the payment of withheld federal employment taxes that are not advanced by a lending bank directly (as loans or overdrafts) or indirectly (as progress payments assigned to the bank which the bank permits the company to retain), the decision of the bank not to permit its direct and indirect advances to be used for the payment of such taxes, and the concomitant use of a veto power over corporate checks, funded through such advances, to insure their use in accordance with the terms of the advances, will not, without more, subject the bank or its lending officer to § 6672 liability. The court, citing the government's brief, specifically noted that the bank was not in control of the company's checking account and that the bank's refusal to make a loan for the payment of employment taxes had not had the effect of altering the control by Messrs. Hill and Moore of the company.

■ We cannot interpret *Hill*, as Commonwealth and Pittman urge us to do, as

precluding § 6672 liability under all circumstances for a lending bank or its officer. The *Hill* court began by setting forth the broad language in *Graham* to the effect that § 6671(b) must be construed to include all those *so connected with* a corporation as to be responsible for the performance of the act in respect of which the violation occurred. The court went on to make a careful distinction between the control which the bank and Jeffus exercised only over the bank's advances and the control which the management of the company continued to exercise over the company's checking account (containing advances from the bank and funds from other sources as well) and its business generally. These aspects of the court's opinion in *Hill* suggest to us that in a situation in which a lending bank and an officer thereof have the power to see to it that the borrower's taxes are paid, to make final decisions concerning the disbursements of the funds of the borrower or to determine which creditors are to be paid and when, the *Hill* court would not hesitate to affirm a judgment holding the bank and its officer liable under § 6672. The instructions in this case (see note 4 *supra*) clearly authorized the jury to find that Commonwealth and Pittman were responsible persons only if the jury found that each could effectively determine how CPF's funds were to be spent and which bills would or would not be paid and when. The instruc-

tions were a correct statement of the law in this circuit.[8]

■ We turn then to the question whether the jury verdicts against Commonwealth and Pittman were supported by the evidence. As we have noted, Commonwealth and Pittman argue that *Hill* is factually so close to this case as to be logically indistinguishable and that the district court should have granted their motions for judgments notwithstanding the verdicts. While recognizing that the actual extent of any control over the finances of CPF exercised by Commonwealth, whether through the actions of Pittman as its president or otherwise, was subject to dispute in this case, Commonwealth and Pittman argue that, "[t]aking the facts in the worst possible light, Commonwealth did no more than selectively extend credit to CPF while having knowledge that CPF had not paid over to the Internal Revenue Service withheld employment taxes, and Pittman in no way exercised more control over which creditors of CPF were paid and which were not than the Vice President [Jeffus] in *Hill*." Brief of Commonwealth and Pittman at 8.

We think that Commonwealth and Pittman have understated what the jury could have found their roles to be in the management of the financial affairs of CPF. Accepting the evidence in favor of the United States, and all inferences reasonably drawn

8. The United States, focusing on one sentence in *Hill* to the effect that the bank and Jeffus were not the employers, did not manage the internal affairs of the corporation, were under no duty to file corporate tax returns, withheld no taxes from corporate employees and were under no duty themselves to pay corporate taxes, concludes that the rationale of *Hill* is based largely on this court's interpretation that § 6672 was intended to reach only those persons who were responsible for collecting, accounting for, *and* paying over the federal withholding taxes. The United States notes that subsequent to *Hill*, the Supreme Court decided *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978), in which the Supreme Court held that failure to perform any *one* of these three functions—*i.e.*, collecting, accounting for *or* paying over the taxes— could result in liability under § 6672. *See Brown v. United States*, 591 F.2d at 1139–1140; *Mazo v. United States*, 591 F.2d 1151, 1153,

1157 (5th Cir. 1979). The government argues that *Slodov* and its progeny have expanded the scope of § 6672 liability beyond that of the "active officer and shareholder" contemplated in *Hill*. However, we do not read *Hill* as hinging upon an "active officer and shareholder" restriction in the concept of a responsible person; our interpretation of this court's opinion in *Hill* reads *Hill* as focusing on the bank's and its officer's lack of control over the company's checking account and the company generally. Our reading of *Hill* renders it consistent with the other cases in this circuit and in other circuits that hold that a person is a "responsible person" if he exercises control over how the corporate employer's funds are to be spent and over which creditors are to be paid and which are not, and when. This interpretation of *Hill* makes it unnecessary for us to address the argument of the United States that *Hill*, as construed by the United States, may no longer be good law in view of *Slodov*.

therefrom, as true, the following facts are established by the record:

(1) Testimony at trial and exhibits, consisting of bank statements for CPF's general account, financial statements and lists of jobs in progress, indicate that for the period involved in this case (October 1976 through mid-April 1977), CPF's only sources of funds consisted of progress payments owned by CPF (in which Commonwealth had a security interest) and advances from Commonwealth (consisting of a direct loan and substantial overdrafts). The bank statements reflect that the progress payments were applied by Commonwealth immediately upon deposit in CPF's general account to reduce the substantial overdraft which existed throughout the period. This means that, unlike the situation in *Hill*, CPF during this period never had *any* unencumbered funds in its account, *i.e.*, funds under CPF's exclusive control, from which it could have paid federal unemployment taxes or, indeed, any other bills. All obligations of CPF during the period had to be met, if at all, through extensions of credit by Commonwealth.

(2) CPF's financial health was clearly very poor, in fact one could fairly say terminal, throughout the period in issue here. The period ended on April 22, 1977, when Commonwealth took over CPF as a creditor in possession.

(3) CPF's aggregate indebtedness to Commonwealth (consisting of loans and overdrafts) was unusually large in relation to the size of Commonwealth, and beginning early in 1977 exceeded Commonwealth's legal lending limit.

(4) As might be expected in view of CPF's terminal condition, the size of its indebtedness to Commonwealth and Pittman's longstanding personal relationship with Dennie, Pittman was involved in CPF's affairs on almost a daily basis, reviewing job progress reports, payments to suppliers and various other financial aspects of CPF's business.

(5) Pittman conceded that he and Dennie would decide, from time to time, which checks had to be paid in order to keep CPF in business. Pittman testified as follows:

Q. When you would be in contact with Dennie, would Dennie tell you which checks would be necessary to be paid to keep the business open?

A. Yes, ma'am he would.

Q. Would you ask him whether checks that had been issued were actually necessary to keep the business open?

A. We would discuss it.

Q. And if he told you the check was necessary, then you would authorize payment of the check; is that right?

A. *If I really felt that it really was.* It's, again, a credit decision based on the data that I had at that moment. (Emphasis added.)

(6) Beginning in January 1977, lists of all checks written by CPF, and beginning in March 1977 the checks themselves, were submitted to Pittman for his approval before the checks were disbursed. Some were approved and some were not. Although essential suppliers were generally paid, Pittman also permitted some nonessential bills (such as Dennie's country club and American Express and Diner's Club bills) to be paid.

(7) Throughout the last quarter of 1976 and during the first part of the first quarter of 1977, the tax deposit checks were delivered to Commonwealth for processing, along with checks transferring money from the general account to the payroll account in amounts sufficient to pay only the net payrolls. Commonwealth transferred the net payroll amount by honoring that check, regardless of the overdraft condition of the general account, but invariably failed to process the federal tax deposit checks. The tax deposit checks were left in a drawer in the desk of John Douglas, a loan officer at Commonwealth.

(8) In February 1977, an official at Commonwealth instructed CPF not to deliver any more tax deposit checks to Commonwealth, and thereafter the checks

were left in the drawer of CPF's book-keeper.

The image that emerges from the foregoing facts, and a conclusion that the jury could clearly have reached, is that of a company wholly dependent for the payment of any bills whatsoever on what Commonwealth's and Pittman's own brief describes as selective extensions of credit. Unlike *Hill*, where the construction company had unencumbered funds and control over its own bank account, CPF had no unencumbered funds and any control which it had over its bank account was, at best, shared with Pittman. The jury verdicts that Commonwealth and Pittman were responsible persons are clearly supported by the evidence.

■ We emphasize that the fact that a bank makes loans (either directly or in the form of overdrafts) to a corporate employer that is failing to pay over withheld federal employment taxes to the United States will not, without more, subject the bank to § 6672 liability. *Hill*, 368 F.2d at 623; *First National Bank in Palm Beach v. United States*, 591 F.2d at 1149. What will subject the bank to liability for those taxes is the assumption of control over how the employer's funds are to be spent and over the process of deciding which creditors of the employer are to be paid and which are not, and when.

*Dennie's Appeal.*

As might be expected, Dennie asserts that, as a matter of law, he could not have been found to have willfully failed to collect, account for, or pay over the withholding and employment taxes due from CPF for the periods in issue in this case because, during those periods, there were no unencumbered funds available to CPF out of which the withheld federal employment taxes could have been paid. He points out that during that period, all accounts receivable were assigned to Commonwealth and the proceeds were used to reduce the overdraft condition of CPF's general account. This condition, combined with the extensive and effective control over CPF's finances

being exercised by Commonwealth and Pittman, prevented CPF from paying over the required taxes.

■■ A responsible person is one who has a final or significant—even if not exclusive—word as to which bills or creditors should be paid. *See Liddon v. United States, supra* at 512–13; and *Newsome v. United States*, 431 F.2d 742, 748–49 (5th Cir. 1970). The fact that other persons may also be liable for the payment of the withheld federal employment taxes is beside the point. The fact that Commonwealth and Pittman may have exercised a significant amount of control over the payment of creditors in this case cannot absolve Dennie of liability.

We agree with the United States that the evidence is overwhelming that Dennie was a responsible person and, indeed, Dennie does not contest on appeal the jury's determination that he was a responsible person. Dennie owned 93.75% of CPF's stock and served as its chairman of the board, president and treasurer. He was responsible for supervising the payroll and signing the checks. According to Pittman's testimony, Dennie started bringing CPF's tax deposits to Commonwealth in the latter part of 1976 with instructions that the tax deposit checks were not to be paid. Pittman's testimony in this regard is corroborated by the testimony of John Douglas, a loan officer at the bank during the period in issue, who testified that Dennie instructed him to hold the tax deposits because "the government can wait." Dennie's own testimony supplied substantial evidence to support the finding that he was a responsible person. He admitted that as early as December 1976, he knew that the payroll tax deposits were not being made. Nevertheless, he continued to sign checks for other expenses. He testified that he met with Pittman on several occasions to discuss which suppliers must be paid. The only time that Dennie specifically instructed Commonwealth that payroll tax deposits had to be made, however, was for the third quarter of 1976 and the check for the deposit was cleared by Commonwealth shortly thereafter.

Turning to Dennie's willfulness argument, even if we assume, for purposes of discussion, that Commonwealth and Pittman exercised exclusive control over which creditors of CPF were to be paid and when, it remains the case that Dennie permitted CPF to continue in business and to use trust funds collected on behalf of the United States to pay other creditors, effectively forcing the United States to become a joint venturer in his business—precisely the result § 6672 was designed to avoid. *See Brown v. United States*, 591 F.2d 1136, 1140–42 (5th Cir. 1979) ("A voluntary, conscious, and intentional act, such as the payment of other creditors in preference to the United States, constitutes 'willfulness.' . . . The responsible person also acts willfully if he proceeds with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the government."); *Kalb v. United States*, 505 F.2d 506, 510 (2d Cir. 1974), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975).

III. COMMONWEALTH'S APPEAL REGARDING SECTION 3505(b) LIABILITY.

At oral argument, the United States advised that if this court affirmed the district court's judgment holding Commonwealth, Pittman and Dennie liable for the unpaid federal employment taxes under § 6672, there would be no need, insofar as the United States is concerned, for us to review the judgment against Commonwealth for the § 3505(b) liability. Since Commonwealth has appealed the § 3505(b) judgment, however, if we are to be spared the necessity of reviewing that judgment, it will be necessary for us to vacate it. We construe the United States' advice at oral argument as evidencing its consent to that treatment.

The judgment of the district court holding each of Commonwealth, Pittman and Dennie liable under § 6672 is affirmed, and the judgment of the district court holding Commonwealth liable under § 3505(b) is vacated.

Each of Commonwealth, Pittman and Dennie shall bear one-third of the costs of this appeal.

\* Former Fifth Circuit case, Section 9(1) of Public

AFFIRMED IN PART and VACATED IN PART.