**MERCANTILE BANK OF KANSAS CITY, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 90–0781–CV–W–9.

United States District Court,
W.D. Missouri,
Western Division.

June 21, 1994.

Harry B. Wilson, Husch & Eppenberger, St. Louis, MO, Ron R. Morgan, Husch & Eppenberger, David A. Vorbeck, Resolution Trust Corp., Kansas City, MO, for plaintiffs.

Dennis M. Duffy, Dept. of Justice, Tax Div., Washington, DC, for defendant.

*ORDER GRANTING PLAINTIFFS' MO-TION FOR SUMMARY JUDGMENT ON PLAINTIFF'S COMPLAINT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT I OF THE COUNTERCLAIM*

BARTLETT, District Judge.

This case comes before the court on cross-Motions for Summary Judgment. Plaintiffs, Mercantile Bank of Kansas City, James P. Goetz and William P. Messer, move for summary judgment on both plaintiffs' Complaint

and on Count I of defendant's Counterclaim and for partial summary judgment on Count II of defendant's Counterclaim. Plaintiffs in their Complaint seek recovery of employment and withholding taxes assessed and collected by the defendant under 26 U.S.C. § 6672. Defendant in Count I of the Counterclaim seeks the unpaid portion of the taxes assessed under 26 U.S.C. § 6672. In Count II of the Counterclaim, defendant seeks a judgment under 26 U.S.C. § 3505(b) against plaintiffs for supplying funds for wages knowing that the federal taxes will not be paid. Defendant moves for summary judgment on Count II of the Counterclaim and for partial summary judgment on both plaintiffs Complaint and Count I of the Counterclaim with regard to whether plaintiffs are "person[s] required to collect, truthfully account for, and pay over any tax" under 26 U.S.C. § 6672.

Plaintiffs have moved for leave to file additional briefing on the defendant's Motion for Summary Judgment on Count II of the Counterclaim. Thus, the Motion for Summary Judgment on Count II of the Counterclaim is not ready to rule.

## I. *Facts*

For the purposes of this summary judgment motion, the parties agreed to these facts.

In December 1989 and January 1990, the IRS assessed a 100% penalty against plaintiffs for the unpaid payroll taxes of Manley Truck Lines, Inc., under the provisions of 26 U.S.C. § 6672 (1986). Plaintiffs paid a portion of the penalty and filed this refund suit challenging the assessment of unpaid payroll taxes and penalty. The United States filed two counterclaims, one seeking the remainder of the unpaid payroll taxes assessed under 26 U.S.C. § 6672, and the other seeking recovery of a percentage of the unpaid payroll taxes pursuant to 26 U.S.C. § 3505(b).

Manley Truck Lines, Inc. was a Kansas City based trucking firm that operated throughout the Midwest and Southwest and employed several hundred people. Manley was part of a group of companies whose parent company was Overland Enterprises, Inc. Both Manley and Overland were owned and controlled by Gene Scott, who died in 1989.

In 1986 and 1987, due to financial difficulties, Manley often failed to remit withheld payroll taxes to the United States as required by law. The Internal Revenue Service intervened in mid–1986 and some unpaid taxes were collected, but a deficiency of over $1,000,000 remains.

Mercantile Bank and the Overland Companies had a bank/customer relationship from the late 1970's or early 1980's. Manley maintained a demand deposit (checking) account at Mercantile, as did each of the Overland subsidiaries. Manley's checking account at Mercantile was a commercial checking account. All Manley's payroll checks were issued from this account. Mercantile gave Manley "same day availability," or instant credit, on funds and checks deposited in this account. The other Overland companies also had checking accounts at Mercantile. During the time in issue in this suit, officers of Overland made intercompany transfers between the accounts of the various Overland companies. Because transfers were possible, Mercantile and Manley agreed that the bank would look at the total on deposit in all accounts of the Overland companies to determine whether any account was in overdraft or potential overdraft position.

Goetz was the loan officer at Mercantile who had day to day responsibility for reviewing the various bank accounts of the Overland companies. Goetz was supervised by Messer who was a senior vice president at Mercantile.

Manley had four loans with Mercantile during the 1986–87 time period. Three of these loans were on real estate secured by deeds of trust. The fourth loan was a revolving line of credit with an $850,000 limit. This line of credit was established in 1984 and was secured primarily by Manley's accounts receivable. "Mercantile periodically (daily or weekly) would advance loan funds to Manley up to a preset maximum, while at the same time it would collect Manley's accounts receivable and use those funds to pay the loan balance down." Pl.Br. at 11.

Under the line of credit loan agreement, Manley was required to have its customers mail their checks to a postal lock box controlled by Mercantile. Mercantile, at its option, would either apply the funds in the lock box to the balance of the line of credit loan or deposit the checks into the Manley operating checking account. During 1986 Mercantile deposited the money sent to the lock box to the Manley checking account rather than applying it to the line of credit balance.

In early 1987 Mercantile placed the Manley line of credit in a problem loan status. Funds received in the lock box were credited to the cash collateral account, where they were applied against the outstanding balance on the line of credit. At the same time, Manley was allowed to draw further amounts against the line of credit.

After Manley filed for bankruptcy in February 1987, Mercantile stopped lending funds to Manley. Overland also filed for bankruptcy protection and was liquidated.

Besides the account at Mercantile, Manley also had accounts at: Bank IV in Lenexa, KS; Bank IV, Olathe, KS; United Missouri Bank, Kansas City, MO; Valley View State Bank, Overland Park, KS; First State Bank, Joplin, MO; City National Bank, Pittsburg, KS; Bank IV, Coffeyville, KS; Worthen Bank & Trust, Little Rock, AR; First National Bank, Springdale, AR; First Tulsa Bank, Tulsa, OK; First National Bank, Fort Smith, AR; State Bank of Countryside, Countryside, IL; Land of Lincoln Bank, Springfield, IL; Exchange National Bank, Chicago, IL; Iola Bank and Trust, Iola, KS; Boatmen's Bank, Springfield, MO and Bank of Boston, Boston, MA. The accounts in these banks were established to facilitate the deposit of funds received from Manley's customers at those locations. Also, direct payments to Manley's vendors were made out of these accounts. From October 1, 1985, to February 26, 1987, $8,496,492.82 was deposited into Manley's non-Mercantile accounts.

II. *Standard for Summary Judgment*

■ Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

■ If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986); *see also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553.

■ The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

■ The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for

trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.,* 477 U.S. at 249, 106 S.Ct. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

■ The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Anderson v. Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2511. Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.,* 477 U.S. at 251, 106 S.Ct. at 2512.

### III. *Discussion*

Employers are required, under the Internal Revenue Code, to withhold from the wages of their employees the employee's share of federal social security taxes and income taxes. 26 U.S.C. §§ 3102(a), 3401(a) (1986). "The withheld sums are commonly referred to as 'trust fund taxes,' reflecting the Code's provision that such withholdings or collections are deemed to be a 'special fund in trust for the United States.'" *Slodov v. United States,* 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978) (citing 26 U.S.C. § 7501(a)). Employers are to pay these sums over to the United States on a quarterly basis. 26 C.F.R. § 31.6071(a)–1.

If the employer fails to pay over amounts withheld from employees' wages, employees cannot be forced by the government to pay the amounts again. In order to encourage employers to pay over amounts withheld from the employees' wages, 26 U.S.C. § 6672(a) provides in pertinent part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax ... shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

Two requirements must be met in order for a party to be liable under 26 U.S.C. § 6672. "[F]irst, the party assessed must be a person required to collect, truthfully account for, and pay over the tax, and second, the failure to collect or to account for and pay over the tax must be willful." *Anderson v. United States,* 561 F.2d 162, 165 (8th Cir.1977) (citing *Hartman v. United States,* 538 F.2d 1336, 1340 (8th Cir.1976)).

The bank plaintiffs and the United States have both moved for summary judgment on the issue of whether the bank and its officers are "persons" under 26 U.S.C. § 6672. Plaintiffs argue that they are not "persons" because: 1) they did not make the decision to stop paying tax funds or to prefer some creditors over the IRS; and 2) Manley had enough funds free and clear of any control by the bank to have paid the payroll taxes withheld to the United States. The United States argues that under the line of credit loan and security agreement, the bank has the power to control Manley in the event of default, plaintiffs are "persons."

■ "Person" is defined in 26 U.S.C. § 6671(b), as follows: "[t]he term 'person', as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." The use of the word "includes"

" 'suggests a calculated indefiniteness with respect to the outer limits of the term' defined." *Commonwealth National Bank of Dallas v. United States,* 665 F.2d 743, 750 (5th Cir.1982) (quoting *First National Bank in Plant City, Florida v. Dickinson,* 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969)).

■ In order for a third party lender to be a "person" for the purposes of § 6672(a), the third party lender must have the power to see to it that the taxes are paid. *Commonwealth,* 665 F.2d at 755. In addition, the third party lender must assume "control over how the employer's funds are to be spent and over the process of deciding which creditors of the employer are to be paid and which are not, and when." *Id.* at 757.

As stated in *Anderson:*

A person need not be an officer, director, employee, or shareholder of a company to be held accountable as a responsible person. The test is whether the person had control of the disbursements of the taxpayer, that is, whether 'he had the final word as to what bills should or should not be paid, and when.' It is not necessary that such *control be exercised exclusively* by the person; *it may be exercised jointly* with others.

*Id.,* 561 F.2d at 165 (citations omitted; emphasis added).

In the cases where third party lenders have been held liable under § 6672, the lender has exercised control over the disbursements of the taxpayer. *See Commonwealth National Bank of Dallas v. United States,* 665 F.2d 743 (5th Cir.1982) (holding a bank liable where a bank officer held checks that were intended to pay the IRS for withheld taxes); *Merchants National Bank of Mobile v. United States,* 878 F.2d 1382 (11th Cir. 1989) (holding the bank liable where the bank had almost complete control over the operation of the company during its last three quarters of operation and where withheld taxes were not paid to the IRS on instructions from the Bank); *United States v. Security Pacific Business Credit, Inc.,* 956 F.2d 703 (7th Cir.1992) (holding the lender liable when, after borrower defaulted, the lender took control of borrower's finances, determined which creditors were paid and loaned the borrower money for the purpose of paying employees on condition that none of the money be used to pay withholding taxes).

When a lender does not exercise control over the taxpayer's disbursements, the lender has not been held liable under § 6672. For instance, in *Fidelity Bank, N.A. v. United States,* 616 F.2d 1181 (10th Cir.1980), the court held that the power to coerce the employer into paying over the withheld amounts does not result in liability to the lender because some exercise of the power to control disbursements is necessary. As stated in *Fidelity:*

[W]e are mindful that because of [the borrower's] complete financial dependence on the bank, [the bank] could have coerced [borrower] into fulfilling its withholding tax obligations. But we are unwilling to hold that the bank had a duty to do so when it had not otherwise intruded into the financial or operational aspects of [borrower's] business; such a holding would effectively extend the scope of section 6672 to precisely duplicate the coverage of I.R.C. § 3505.

*Id.*

In the line of credit loan and security agreement, Manley agreed to provide Mercantile each month with a listing of all the taxes that were due and to certify which taxes had been paid and which were outstanding. The Security Agreement also provided that Mercantile could pay the taxes if Manley did not. The United States argues that the terms of the Loan and Security Agreement are sufficient to make the Bank a "person." The United States relies on the following language from *Commonwealth:*

[I]n a situation in which a lending bank and an officer thereof have the power to see to it that the borrowers' taxes are paid, to make final decisions concerning the disbursement of the funds of the borrower or to determine which creditors are to be paid and when the *Hill* court would not hesitate to affirm a judgment holding the bank and it officer liable under § 6672.

*Commonwealth,* 665 F.2d at 755.

Out of context, this quote would appear to support the United States' position. Howev-

er, if this quote is read in context, *Commonwealth* requires the exercise of control over the employer's funds. The mere existence of the power to control is not enough. For instance, in a footnote at the end of the paragraph from which the United States took the quote above, the court said that its

> reading of *Hill* renders it consistent with the other cases in this circuit and in other circuits that hold that a person is a 'responsible person' *if he exercises control* over how the corporate employer's funds are to be spend and over which creditors are to be paid and which are not, and when.

*Id.* at 755 n. 8 (emphasis added). The *Commonwealth* court also stated "[w]hat will subject the bank to liability for those taxes is the *assumption of control* over how the employer's funds are to be spent." *Id.* at 757 (emphasis added).

At oral argument, as an alternative basis for finding plaintiffs were "persons," the United States argued that the bank actually assumed control by deciding which creditors to pay when the bank returned certain checks drawn on Manley's account for insufficient funds. On all but two occasions the checks which were returned by the bank were designated by Manley. The United States argues that Manley recommended which checks to return and that the bank actually decided which checks to return.

The parties agreed to the following facts for the purposes of the Motion for Summary Judgment:

> Lemuz (a Manley employee) would then communicate the company's recommendations about which checks to dishonor to Goetz at the bank. Except for one or two days in 1986, which are discussed further below, no undisputed evidence has yet been adduced that the bank failed to follow Manley's recommendations. (¶ 57(e))

> \*　　\*　　\*　　\*　　\*　　\*

> During all four quarters of 1986, and the first quarter of 1987, the decisions about which checks to release (i.e., send in the mail to a creditor) were made by Scott or other top Manley officers. There is no testimony that Mercantile or Goetz or

Messer were involved in these decisions. With respect to FTD checks, Scott made these decisions, and he had the 'final say'. Mercantile and its officers did not intervene in any fashion. (¶ 59)

\*　　\*　　\*　　\*　　\*　　\*

> From the beginning of 1986 until near the end of the year, while Lemuz was handling cash management, decisions about which check to return—and therefore which creditor to prefer—were made by Scott or other top Manley officers. Lemuz 280–83; Goetz 136–37, 144–45. The decision was then communicated to the bank, which followed the Manley advice (Lemuz characterized Manley's advice to the bank as a 'recommendation', while the bank viewed it as a directive.) There were only one, or possibly two, instances where the foregoing process was not followed, in which case the bank followed its normal policy of returning largest checks first without regard to the identity of the payee. This occurred when employees who were unfamiliar with the handling of the Manley account substituted for Goetz. (¶ 61(a))

The United States argued that Lemuz' characterization of Manley's advice as a "recommendation" meant that the bank was at times actually involved in the decision of which creditors should not be paid. Defendant ignores the rest of the sentence which provides that the bank viewed the recommendations from Manley as directives. Thus, on this record, Manley's instructions as to which checks to honor were taken by the bank as directives, not recommendations.

■ On the few occasions when Manley did not tell the bank which checks to return, the bank followed its normal procedure of returning the largest checks until the account balanced without regard to the identity of the payees. Although on these occasions the bank decided which checks to not pay, the bank did so by applying its normal check return policy, not by exercising its power under the loan agreement to control Manley's business. The bank did not choose whether an individual creditor should or should not be paid for any business or operational purpose of Manley. Therefore, based

on the facts agreed upon by the parties, the bank did not exercise control over how Manley's funds were spent in dealing with insufficient funds checks.

For the reasons stated, neither the bank nor the individual plaintiffs assumed control over Manley's finances so as to create a duty to pay the withheld taxes to the United States. Therefore, neither the bank nor the individual plaintiffs are "persons" under 26 U.S.C. § 6672.

Accordingly, it is ORDERED that:

1) plaintiffs' Motion for Summary Judgment on plaintiffs' Complaint is granted;

2) plaintiff Messer shall be refunded $7,231 plus interest calculated at the statutory rate;

3) the remaining penalty of $1,377,021.91 assessed by the Internal Revenue Service against plaintiff Messer as a responsible person under 26 U.S.C. § 6672 is abated;

4) plaintiff Goetz shall be refunded $3,100 plus interest calculated at the statutory rate;

5) the remaining penalty of $1,197,178.73 assessed by the Internal Revenue Service against plaintiff Goetz as a responsible person under 26 U.S.C. § 6672 is abated;

6) plaintiff Mercantile Bank of Kansas City shall be refunded $2,097 plus interest calculated at the statutory rate;

7) the remaining penalty of $1,382,155.91 assessed by the Internal Revenue Service against plaintiff Mercantile Bank of Kansas City as a responsible person under 26 U.S.C. § 6672 is abated; and

8) defendant's Motion for Summary Judgment as to Count I of the Counterclaim is denied.